GERMAN-AMERICAN INSURANCE COMPANY *v.* SHEPHERD ET AL.

[No. 10,102.    Filed March 10, 1920.    Rehearing denied June 22, 1920.    Transfer denied June 2, 1922.]

1. INSURANCE.—*Fire Insurance.—Action on Policy.—Findings.—Sufficiency.—Location of Property.*—In an action on a policy of fire insurance, the court's findings *held* to show that the goods insured which were destroyed were located in the building described in the policy.    p. 319.

2. INSURANCE.— *Fire Insurance.— Proofs of Loss.— Waiver.— Investigation of Fire by Insured under Nonwaiver Agreement.*—Where after a fire defendant insurer and insured, together with another insurer, entered into a nonwaiver agreement for investigation of the fire which stated that the intent was to preserve the rights of all the parties and that the in-

vestigation should not waive or invalidate any rights of either party, and pursuant to such agreement the origin of the fire and loss were investigated, a clause in the policy requiring proof of loss showing other insurance, knowledge of origin of fire, etc., was waived. p. 320.

3. SALES.—*Sale of Goods.—Vesting of Title.*—Where the terms of a contract have been definitely agreed on and the goods specifically ascertained, and nothing remains to be done by the seller except to deliver the goods, or by the buyer except to pay for them, the title will, unless. a contrary intention appears, vest at once in the buyer, even though the goods have not been delivered or paid for. p. 325.

4. INSURANCE. — *Fire Insurance. — Policy Provision against Change in Title of Insured Goods.—Breach.—Executory Contract of Sale.*—Defendant insurer could not avoid liability for damage by fire to insured stock of goods and store fixtures on the ground that a clause in the policy prohibiting change in title or ownership was breached by a contract for the sale of the goods, where it was not the intention of the parties to the contract that the title should pass until an invoice was taken and all preliminary matters disposed of and bill of sale given, and the fire occurred before the invoice had been completed. p. 326.

From Wells Circuit Court; *William H. Eichhorn,* Judge.

Action by George Shepherd and others against the German-American Insurance Company. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Burke G. Slaymaker,* for appellant.
*A. W. Hamilton,* for appellees.

McMAHAN, J.—This action was commenced by the appellees against the appellant on a policy of fire insurance. The appellant answered in five paragraphs, the first being a general denial. The second, third and fifth paragraphs alleged that the policy sued on provided it should be void if any change, other than by the death of the appellees, should take place in the interest or title of the subject of said insurance, and that appellees had violated the terms of said policy, in that they caused a

change in the title and a change in the interest of the subject of said insurance to take place.

The fourth paragraph alleged that appellees had other insurance, and appellant, if liable, was only liable for five-ninths of the loss. A reply of general denial closed the issues. The court found the facts specially and stated conclusions of law thereon. Judgment was rendered for appellees. Appellant excepted to each conclusion of law, and filed its motion for a new trial on the grounds: (1) That the finding of the court is not sustained by sufficient evidence; (2) is contrary to law; (3) that the assessment of the amount of recovery was erroneous, being too large. This motion was overruled and an exception reserved.

The facts as found by the court are in substance as follows: By the terms of the policy sued on, appellant insured the appellees for the term of one year from March 4, 1915, against loss by fire to an amount not exceeding $1,000, on a stock of hardware, office furniture and fixtures contained in a one story brick building situated on lot 16, on the west side of Jefferson street in the town of Ossian. The policy provided that it should be void, "If any change other than by death of the insured take place in the interest, title or possession of the subject of insurance," and also that, "If fire occur, the insured shall give immediate notice of any loss thereby in writing" to the appellant.

A fire occurred February 15, 1916, and damaged the property so insured.

January 28, 1916, appellees entered into a written contract with John G. Sterling, wherein said Sterling agreed by way of exchange to sell to appellees certain real estate and in payment for the same appellees agreed to make and deliver a bill of sale of their stock of hardware including fixtures. They also agreed as a part of the payment for said real estate to warrant and sell

a part of lot 16, in Ossian, specifically describing the same. Said contract provided for the selection of appraisers to invoice the stock of goods, and it was agreed that each of the parties were to make deeds for the real estate they were to convey, and that said deeds and the bill of sale were to be placed in escrow to be held until delivery was ready to be made. It was also agreed that if either party failed or refused to perform his part, that he should pay to the other party as liquidated damages the sum of $1,500. After said contract was executed, and before said fire occurred, the appellees and Sterling started to make an invoice of the stock during which time the cash receipts from the sale of goods which had been invoiced were kept separate from the funds of appellees, and were delivered to Sterling, when the possession of said stock of merchandise was later surrendered to him. The fire in question occurred during the time this invoice was being made.

All merchandise damaged or lost by fire had been invoiced before the fire, but the fixtures had not been invoiced at time of the fire. On February 15, 1916, and after the fire Sterling and appellees entered into a supplemental contract wherein the appellees agreed to pay Sterling the full amount of the damages to the stock of goods and building on account of said fire, and that the deeds and bill of sale were to be held in escrow until the damages were appraised by the appellant.

The appellees had also caused said stock of goods to be insured by the Aetna Insurance Company. On March 3, 1916, appellant and appellees and the Aetna Insurance Company entered into a written agreement for the purpose as expressed therein of providing for an investigation of the fire and determining the amount of the damage caused by the fire, without regard to the liability of the appellant, and it was therein agreed that the loss to the stock was $994, and to the fixtures $83.

It was stated in this agreement that the intent was to preserve the rights of all the parties and that the action of the appellant in making said investigation should not waive or invalidate any rights of either party to the agreement. The damaged property was described in this agreement as being the property of appellees and consisting of a stock of hardware in a brick building on lot 16, west side of Jefferson street in Ossian, Indiana.

March 3, 1916, appellees executed and delivered to said Sterling their bill of sale of the stock of merchandise, furniture and fixtures mentioned in said contract of January 28, which was the stock of goods, furniture and fixtures mentioned in the policy sued on, and on the same day Sterling delivered to appellees, the said deed of conveyance executed by him, and Sterling at that time took possession of the stock of goods, furniture and fixtures mentioned in the complaint and policy sued on, and of the real estate mentioned in said contract of January 28. The property insured was not listed for taxation by appellees in 1916, but was listed and returned for taxation by Sterling. On March 3, 1916, appellees executed to Sterling their promissory note for $1,053, that being the actual amount of the damages caused by said fire to the insured property. The possession of the real estate and personal property which appellees agreed to sell to Sterling was from January 28, 1916, to March 3, 1916, held by the appellees, and Sterling retained possession of the real estate described in the contract which he was to convey to appellees, until March 3, 1916. Sterling never gave the appellees any money or thing of value as a consideration passing from him to appellees before March 3, 1916. The deeds, bill of sale and possession of the real estate and personal property mentioned were delivered and exchanged March 3, 1916, and all the differences in the

consideration were determined and settled that day. Sterling made no sale of any of the goods in said stock until after he took possession March 3, 1916. Pending and after invoice, but before March 3, a few articles were sold by appellees on credit, and account was made of same, as due appellees, and said accounts were turned over to Sterling. It was the intention of all the parties to said contract that the title to the property theretofore owned by them respectively should not pass until all preliminary matters were completed, including the invoice of the stock and fixtures, the difference if any, settled, and until the bill of sale was given and the papers delivered to the parties entitled thereto.

Upon these facts the court made and stated the following conclusions of law: (1) That on February 15, 1916, appellees were the owners of the property mentioned in the complaint and policy of insurance sued on; (2) that said policy of insurance was at the time of said fire in full force and effect in favor of appellees; (3) that appellees were entitled to recover from appellant the sum of $563.32.

Appellant's first contention is that the court erred in the second and third conclusions of law for the reason that there is no finding that the property damaged or destroyed was located in the building described in the policy. The contention being that it must appear that when the fire occurred the property insured was located at the place mentioned in the policy.

The court found that, the property damaged by the fire was insured while located in a one story brick building on lot 16, west side Jefferson street in Ossian; 1. that appellees on January 28, 1916, entered into a written agreement with Sterling to sell their "hardware store and other fixtures located in the one story brick store room on the main street of Ossian," and the following real estate, "part of lot 16" on plat

of Ossian, the same being described by metes and bounds; that the stock of merchandise and property mentioned in the policy sued on was the property mentioned in the contract between appellees and Sterling, and referred to therein as the hardware store and fixtures; that after the fire appellees and Sterling entered into a supplemental contract, wherein it was stated that there having been a fire damage to the "stock and building," appellees agreed to pay Sterling the full appraised value of the damage to the stock and building mentioned in the policy and in the contract dated January 28 be-. tween appellees and Sterling; that after the fire appellant and appellees entered into what they denominated a "non-waiver agreement" for the purpose of investigating the fire and ascertaining the amount of loss occasioned thereby to the property of appellees, "consisting of a stock of hardware in brick building, lot 16, west side Jefferson street, Ossian, Indiana, and the store and office furnishing and fixtures therein," and which contract related to the fire and to the property and to the loss and damage thereto mentioned in the policy and complaint. From these facts it is clear that the property insured was at the time of the fire located in the building described in the policy, and that there is no merit in appellant's contention.

It is next contended that the facts found show neither performance by the appellees nor any waiver by the appellant of the provision of the policy requiring proof of loss.

After the fire, appellant and the Aetna Insurance Company entered into an investigation of the fire and the amount of the loss. The proofs which appellees were required to furnish in accordance with the terms of the policy called for a written statement setting forth the knowledge and belief of appellees

as to the time and origin of the fire, the interest of appellees and others in the property, the cash value of each item, and amount of loss thereon, other insurance, by whom and for what purpose the building described in the policy was used at the time of the fire, etc. The appellant when the "non-waiver agreement" was entered into knew that appellees had insured the stock of hardware with the Aetna Insurance Company, as that company was a party to that agreement, and in connection with appellant, appeared and entered into the investigation of the fire and the amount of loss. It will be observed from the agreement that appellant was not only investigating the amount of the loss, but was also investigating the fire. This certainly means that it was investigating the time and origin, and all other matters fairly connected therewith. The appellant at that time made such investigation of the property insured as to be able to agree with appellees as to the amount of the loss and most certainly learned by whom, and for what purpose the building was occupied. Can it be said that after appellant had made this investigation of the fire and had determined the amount of the loss, that it was the intention of appellant that appellees should furnish it a written statement relative to the time and origin of the fire, other insurance, the value of the property and amount of the loss, who occupied the building described in the policy and for what purposes? These are the very things that appellant was investigating. It certainly was not the intention of the parties that appellees should furnish any such statement, after appellant had made its investigation and had entered into the agreement as to the amount of the loss. The appellant did not by making the investigation of the fire admit any liability under the policy. The effect of this agreement was that such investigation was to be

made without regard to liability and without waiving or invalidating any defense it might have. The appellant by entering upon the investigation of the many things required to be furnished in the proofs of loss, thereby waived the formal proofs as required by the terms of the policy. Having entered into the investigation, if there was any further proofs desired, it was the duty of appellant to have so informed the appellees at that time and not mislead them by making the investigation and agreeing upon the amount of the loss without any intimation that further proofs were required. The agreement to investigate the fire and the agreement as to the loss are dated March 3, 1916, but there is no finding as to when the appellant began the investigation, whether before the written agreement was entered into or afterwards. The proofs of loss required by the policy related to and were intimately connected with the very things that were being investigated, i. e. the time and origin of the fire and the amount of the loss, and the proofs of loss were thereby waived. After the making of this investigation, the furnishing of proofs of loss was a useless thing and not required.

While the "non-waiver agreement" in this case is identical in form with the agreement in *Keet-Rountree, etc., Co.* v. *Insurance Co.* (1903), 100 Mo. App. 504, 74 S. W. 469, cited by appellant, the facts are quite different. The stipulations of the policies in that case required that the insured should not only make an itemized inventory of the stock and keep a complete set of books, but should cause such books and inventory to be safely locked in the fireproof safe at night, and during non-business hours or that he would keep such books and inventory in some place where they would not be destroyed by the burning of his store and stock of merchandise. After the agreement was signed, the agent

of the insurance company called for the inventory and books of account, and it was learned that they had been left in a desk in the store and were burned. No question was there raised as to the proofs of loss. The contention was that the insurance company had waived its right to defend on account of breach of the warranty. The court held that the evidence failed to disclose any conduct on the part of the insurance company, from which a waiver of the condition of the policy which required the safe-keeping and protection of the inventory and books could be fairly drawn; that under the terms of the agreement the adjustment was without prejudice to either party; that the purpose of the agreement to fix and counteract beyond misapprehension or dispute, the consequence and effect of the investigation of the fire and its results and to anticipate and exclude the inferences usually to be drawn from such examination if conducted unconditionally and without such agreement. In the absence of such an agreement an adjustment of loss usually implies a liability and is a circumstance from which an intention to make payment under the policy may effectually be deduced.

In *Urbaniak* v. *Firemen's Ins. Co.* (1917), 227 Mass. 132, 116 N. E. 413, there was a submission by agreement to referees. The agreement of submission provided that neither the submission nor the award of the referees should affect any question other than the amount of loss. It was not a question in that case whether there had been a waiver of proofs of loss by the submission, but whether or not under the agreement of submission, the insurance company was estopped from contesting liability. The court simply held that the insurance company was not estopped from contesting liability.

In *Scottish Union, etc., Co.* v. *Cornett Bros.* (1914),

42 Okla. 645, 142 Pac. 315, proofs of loss were furnished by the insured after which the adjuster for the company visited the insured and upon learning that the books of accounts together with all the inventories had been destroyed in the fire, denied any liability on the grounds that the books and inventories had been destroyed, and that the insured had violated the provisions of the policy by failing to observe and comply with the "iron safe" and "inventory" clauses of the policy. The parties there entered into a non-waiver agreement identical in form with the one now under consideration. The insured there contended that the insurance company by making the investigation waived the violation of the book and inventory, and iron safe clauses in the policy. The court held that there was nothing in the record to show that the company had previously waived or abandoned its rights under the provisions of the book and inventory clause; but that it had waived the iron safe clause for the reason that the agents who issued the policy had knowledge that the insurer had no iron safe, and for that reason kept the policy in their safe for the insured. There the company upon learning of the failure of the insured to comply with the provisions of the policy relative to keeping the books and inventory, denied any liability, and with knowledge of this fact, the parties entered into the agreement relative to the investigation of the cause of the fire and ascertaining the amount of the loss with the express agreement that by so doing, neither party waived or invalidated any rights whatever of either of the parties to the agreement. The insured in that case knew that the insurance company was denying liability because of the failure to comply with the terms of the policy, and entered into the agreement to investigate the cause of the fire and the amount of the damages with the express understanding that by so doing, the insurance company did not waive its right

to contest the question of liability because of the failure of the insured to comply with the terms of the policy.

It is to be observed that the defense set out in the second, third and fifth paragraphs of answer in the instant case, was not that appellees had failed to furnish proofs of loss, but that they had violated the provisions of the policy, in that there had been a change in the title to the property without the consent of appellant.

The next contention of appellant is that there was a change of title and change of interest in the insured property before the fire occurred; that under the contract between appellees and Sterling the goods became the property of Sterling at the time the contract was concluded.

Appellant argues that the facts in this case show that the appellees by their contract with Mr. Sterling violated the terms of the policy, and that the title of the property insured passed to Mr. Sterling the moment the contract was concluded; that the transaction was an executed sale, and that the title passed from the appellees before the fire occurred.

Where the terms of a contract have been definitely agreed upon, and the goods have been specifically ascertained, and nothing remains to be done by the seller except to deliver the goods, or by the buyer except to pay for them, the title will, unless a contrary intention appears, vest at once in the buyer, even though the goods have not been delivered or paid for. In such a case, the buyer may retain possession until the goods are paid for; but it is possession which he thus retains and not title. Mecham, Sales §501.

As between the parties, the title to personal property passes without any delivery, whenever the sale is complete. An agreement to sell an article by weight or measure, where the article is identified and the price

agreed upon, may be a complete sale if the parties intended it as such, although the article sold is not weighed or measured. *Holliday* v. *Burgess* (1864), 34 Ill. 193.

The Supreme Court of Michigan in *People* v. *Sheehan* (1898), 118 Mich. 539, 541, 77 N. W. 88, said: "It is a general rule that, when one has agreed to sell and the other to buy a specific and designated article, the title passes to the purchaser at once, unless the terms of the contract indicate the intention to have been otherwise, and delivery is not essential to the passing of title as between the parties and their privies. This rule is supported by innumerable cases. * * * Where there is no manifestation of intention, the law presumes a sale, and the immediate transfer of title, if the specific thing is agreed on, and it is ready for immediate delivery."

The court expressly found that it was the intention of the appellees and Mr. Sterling that the title to the property theretofore owned by them respectively should not pass until all preliminary matters were completed including the invoice of the stock and fixtures, the difference in value if any, settled as agreed upon, and until the bill of sale and deeds were delivered to the parties entitled thereto. This being the fact, the title to the stock of goods was under the authorities in the appellees at the time of the fire and there was no such change of title or interest as to prevent a recovery, 14 R. C. L., Insurance, §297. The judgment being for the amount of the loss as agreed upon is not excessive.

There was no error in overruling the motion for a new trial nor in the conclusions of law.

Judgment affirmed.