AUTOMOBILE UNDERWRITERS, INC. *v.* WHITE.

[No. 26,470.   Filed July 6, 1934.   Rehearing denied October 9, 1934.]

*Morton C. Embree* and *Charles O. Baltzell,* for appellant.

*Arthur S. Wilson* and *S. L. Vandeveer,* for appellee.

TREANOR, J.—This action was brought by appellee against appellant to recover the value of an automobile destroyed by fire, and is based upon a policy of insurance, executed by the State Automobile Insurance Association to appellee, insuring appellee against any such loss.

Appellant filed an answer in two paragraphs to the complaint, the first paragraph being in general denial. The second paragraph of answer is as follows:

> "The defendant, for its further and second paragraph of answer to the complaint in the above-entitled cause, says that the policy of insurance set forth as an exhibit to the complaint herein contains the following express provision namely:
>
> " 'This contract does not cover loss or damage resulting or arising from any of the following causes or while any automobile described herein is being used, operated or . . . maintained under any of the following conditions: . . .
>
> " 'Any assignment or transfer or change of interest hereunder, either voluntary or otherwise, or chattel mortgage, conditional sales contract or lease contract, shall immediately terminate this policy, unless provided for herein.'
>
> "The defendant further says that prior to the time of the alleged destruction of the automobile described in the complaint by fire the plaintiff had assigned and transferred said automobile and had changed his interest therein, and had parted with the unconditional and unencumbered ownership thereof, in this, that he had delivered the same to the Marshall Flying School, Inc., of Marshall, Missouri, as security for the payment of a note executed by him to said Marshall Flying School, Inc., covering the unpaid balance of the purchase price of an airplane purchased by him; and that said automobile was so held by said Marshall Flying

School, Inc., at the time of the alleged destruction of said automobile; and that at the time of the alleged destruction of said automobile by fire the plaintiff had assigned and transferred the same, and had changed his interest therein, and was not in the unconditional and unencumbered ownership thereof; and that by reason thereof the policy of insurance described in the complaint had completely terminated prior to the time of the alleged destruction of said automobile, and said policy of insurance was not in force and effect at the time of the alleged destruction of said automobile by fire."

The plaintiff filed a reply in general denial. Trial by jury resulted in a verdict in favor of plaintiff and judgment was rendered accordingly. Appellant assigns the overruling of its motion for new trial as error. Causes for new trial presented for consideration upon appeal are: (1) that the verdict of the jury is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) the giving of certain instructions to the jury; and (4) the admission in evidence of certain testimony of appellee as to his ownership of the automobile at the time of the fire.

There is evidence to establish the following material facts: In May, 1928, appellee purchased an automobile and thereinafter in May, 1929, insured the same against loss or damage by fire for a period of one year extending from May 18, 1929, to May 18, 1930, the policy of insurance being executed by the State Automobile Insurance Association and containing the provision set out and pleaded in appellant's second paragraph of answer. In June, 1929, the appellee went to Missouri and on June 29, 1929, entered into a written contract with the Marshall Flying School, Inc., which contract, insofar as it affects this controversy, is as follows:

"The Marshall Flying School, Inc., of Marshall, Mo., to be known as Party of the First Part, and F. M. White of Oakland City, Ind., to be known as

Party of the Second Part, have this day entered into the following agreement:

"Party of the First Part has this day received from Party of the Second Part $100 (check number) as a deposit on a Standard OX Clip Wing training plane, No. 3116. Party of the First Part agrees to hold the above described airplane for Party of the Second Part until August 1, at which time Party of the Second Part shall make his appearance in Marshall to accept delivery.

"The Party of the Second Part agrees to forward an additional $100 to Party First Part on July 7, and also agrees to make an additional payment of $400 upon his arrival in Marshall on August 1, and to deliver to the Marshall Flying School a 1928 Pontiac Landeau sedan, which Party of the First Part is to hold as security for a note in the amount of $295, representing the unpaid balance on the above described airplane. The Party Second Part agrees to prove clear title to the above mentioned automobile and further agrees to take up his note within a period of six months.

"Party of the First Part agrees to make a reasonable effort to dispose of the above mentioned automobile for Party of Second Part and to turn over to him all funds in excess of $295 which is received for said automobile. Party of Second Part has set a price of $600 for the above mentioned automobile. . . ."

Appellee made the cash payments provided for in the contract and on August 28, 1929, he executed his note payable to the Marshall Flying School, Inc., for $295. He retained possession of the automobile and continued to keep and use it, but at the time of the execution of the note for $295 he delivered a key for the automobile to the Marshall Flying School, Inc., and also delivered the unendorsed certificate of title to the Marshall Flying School, Inc., "for their inspection." The unendorsed title was in the possession of the Marshall Flying School, Inc., at the time of the loss in controversy.

Under his first, second, and third causes for new trial, appellant contends that a "change of interest" as used

in the above quoted provision of the policy was effected by the execution of the contract on June 29, 1929, wherein appellee agreed "to deliver" on August 1, 1929, "to the Marshall Flying School" the automobile here involved, which was to be held "as security for a note in the amount of $295, representing the unpaid balance" on the airplane; and that the policy was thereby terminated.

Appellant points out. that under the terms of the contract between appellee and the Marshall Flying School, Inc., the latter had the right to take the automobile into its exclusive possession on August 1, 1929, or thereafter, and that the policy of insurance was immediately terminated upon the execution of the contract, regardless of the subsequent conduct of the parties.

The contract entered into between appellee and Marshall Flying School, Inc., was an executory agreement to thereafter pledge the automobile in question as security for a note to be executed. It was not a pledge but contemplated that a pledge would be made; it was an executory contract to pledge. It would have afforded the basis for the creation of an equitable lien upon the automobile in favor of the Marshall Flying School, Inc., enforcible upon the latter's performance of its obligations under the contract.[1]

Had the executory agreement contemplated the sale,

*Note 1.* "The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, or purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. . . .; but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done. In order, however, that a lien may arise in pursuance of this doctrine, the agreement

rather than the pledge, of the property to the school, it would not have constituted a "change of interest" within the meaning of that term as used in the condition of the policy so as to terminate the policy upon the making of such agreement.[2] No greater effect can be given logically to the making of an agreement to pledge than would be given the making of an agreement to sell personal property.

We hold that the contract between appellee and the Marshall Flying School, Inc., did not effect a "change of interest" and did not terminate the policy.

Appellant complains of the giving of instruction No. 3 requested by appellee, which is as follows:

"The fact, if you find it to be a fact, that the plaintiff about the 1st of August, 1929, delivered the possession of his certificate of title to said automobile and a switch key to said automobile to said Marshall Flying School, Incorporated, but that the plaintiff retained said automobile in his possession and under his absolute control, the delivery of such certificate of title and switch key would not constitute a valid pledge of said automobile, nor effect the title of the plaintiff thereto."

must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation." Pomeroy's Equity Jurisprudence, Vol. 3 (4th Ed.) §1235.

*Note 2.* "It is generally agreed that a contract for the sale of personalty which remains *in fieri*, and unaccompanied by transfer of possession, effects no change in 'interest' therein, within the meaning of condition in standard fire policy, now in general use, stipulating that, unless otherwise provided by agreement indorsed thereon or added thereto, policy shall be void 'if any change . . . take place in the interest, title, or possession' of the subject of insurance. *Elder* v. *Insurance Co. of N. A.* (1917), 206 Ill. App. 172; *German-American Ins. Co.* v. *Shepherd* (1920), 78 Ind. App. 314, 126 N. E. 447; *Erb* v. *German-American Ins. Co.* (1896), 98 Iowa 606, 40 L. R. A. 845, 67 N. W. 583; *Hubbard* v. *Home Ins. Co.* (1920), 205 Mo. App. 316, 222 S. W. 886; *Home Mut. Ins. Co.* v. *Tomkies* (1902), 30 Tex. Civ. App. 404, 71 S. W. 812 (affirmed upon certificate of dissent in (1903) 96 Tex. 187, 71 S. W. 814)." 60 A. L. R. 80-81.

The instruction is correct in stating that the facts therein set out would not constitute a valid pledge. *Fletcher American National Bank* v. *McDermid, Rec.* (1921), 76 Ind. App. 150, 128 N. E. 685. Neither would plaintiff's title to the automobile be affected by the facts as set out in the instruction.

Instructions Nos. 3 and 4, given by the court upon its own motion, are objected to on the ground that by such instructions the court submitted to the jury the question as to whether or not the contract between appellee and Marshall Flying School, Inc., "effected an assignment or a transfer or a change of interest in the automobile, or constituted a chattel mortgage, or a conditional sales contract or a lease contract." As above stated, the contract did not effect a "change of interest" and did not terminate the policy. Therefore appellant could not have been harmed by the submission of that question to the jury, though the question should have been decided and the same result reached by the court.

Likewise, appellant could not have been harmed by the action of the court in permitting the appellee, as a witness in his own behalf on direct examination, to testify that he was the owner of the outomobile in question at the time of the fire.

The trial court did not err in overruling appellant's motion for new trial.

Judgment affirmed.