**BOARD OF COMMISSIONERS OF ADAMS COUNTY, Appellant–Defendant,**

v.

**Ronald E. PRICE, Appellee–Plaintiff,**

**and**

**United Farm Bureau Mutual Insurance Company, Appellee–Interpleaded Defendant.**

**No. 90A05–9103–CV–82.**

Court of Appeals of Indiana, Fifth District.

Feb. 6, 1992.

Ralph R. Blume, Blume, Wyneken, Connelly, Jordan & Stucky, Fort Wayne, appellant-defendant.

Cynthia Rockwell, John O. Feighner, Haller & Colvin, Fort Wayne, for appellee-plaintiff.

BARTEAU, Judge.

This appeal follows a jury's verdict of $100,000 for appellee-plaintiff Ronald Price in his personal injury lawsuit against appellant-defendant Board of Commissioners of

Adams County ("the County"). The lawsuit ensued from the collision of two vehicles at an unmarked intersection in rural Adams County. Price, driving his personal vehicle, collided with a truck owned by Adams County Farm Bureau Co-op ("Farm Bureau," not an entity of the County) and driven by its employee Robinette. Price settled with Farm Bureau and Robinette, and proceeded to trial against the County only.

On July 7, 1986, in the early afternoon, under a clear sky, Price was eastbound on Adams County Road 200 North ("200 N"), just west of Adams County Road 100 West ("100 W"). Simultaneously, Robinette was northbound on 100 W, just south of 200 N. The two roads were stone-surfaced, over level terrain, and crossed each other at right angles. The intersection of 200 N and 100 W was unmarked by traffic control signs and surrounded by farm fields. Three of the fields were in soybeans, while the fourth, the southwest quadrant, was in corn, to a height of about six feet and to within about eight feet of the roadway. Thus, the cornfield was to Price's right as he drove east, and to Robinette's left as he drove north. They collided in the intersection, with the front of Robinette's truck striking the passenger side of Price's vehicle. Price suffered a broken neck.

His theory of the case imposed liability on the County for failing to mark the intersection. The County defended on the grounds of governmental immunity, no breach of duty, that the lack of traffic sign was not the proximate cause, and the contributory negligence of Price. Those issues have been argued by the County in this appeal, as well as an issue involving jury instruction # 28 and one of error in offsetting the Farm Bureau–Robinette settlement against the jury's verdict. Further facts are supplied where necessary. We affirm.

## I. IMMUNITY

"A governmental entity ... is not liable if a loss results from: ... the performance of a discretionary function...." Ind.Code 34–4–16.5–3(6). The Board of Commissioners of Adams County is a governmental entity. I.C. 34–4–16.5–2(c), (f)(10). Thus, the County is immune from damages in tort for losses resulting from the performance of its discretionary functions. The statute fails to define "discretionary function," so categorization of a particular act or omission devolves to the judiciary.

The County's immunity argument relies to a great extent on *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958, *trans. denied,* which exemplifies the former practice of classifying governmental actions as either discretionary or ministerial. Although *City of Tell City* does offer strong support for the County, that decision has been superseded by the opinion of our supreme court in *Peavler v. Board of Comm'rs of Monroe County* (1988), Ind., 528 N.E.2d 40, *appeal after remand* (1990), Ind.App., 557 N.E.2d 1077, *trans. denied.* Because the jury trial in Price's case was held in July, 1990, nearly two years after the decision in *Peavler,* the principles therein apply to this appeal.

*Peavler* discarded the discretionary/ministerial approach to immunity in favor of the practice in federal courts of "determin[ing] which acts are entitled to immunity by distinguishing acts performed at the planning level from acts performed at the operational level." *Id.* at 43. Under the planning/operational analysis of immunity, "the essential inquiry is whether the challenged act is the type of function which the legislature intended to protect with immunity." *Id.* at 46. In regard to the placement of warning signs on the highways, our supreme court wrote:

The counties argue that, while failure to maintain a previously posted traffic sign is non-discretionary, the original decision to install one is discretionary. Clearly, there are cases on either end of the spectrum which will fall automatically into the category of discretionary or non-discretionary functions. Such is the case of the failure to properly maintain a warning sign. It does not follow, however, that the decision to post such a sign is automatically discretionary.

. . . .

While potential liability may have some effect on this government function, the government is still shielded by immunity for actual policy-making decisions regarding warning signs. *Thus, the government is exposed to liability only when no policy oriented decision-making process has been undertaken.*

. . . .

Considering the nature of the conduct, the effect on government operations, and the capacity of the courts to evaluate the propriety of the government's actions, we cannot say that governmental policy is so clearly implicated by decisions regarding placement of warning signs that all such decisions are discretionary ... as a matter of law. Had the legislature intended for such an act to be immune outside the parameters of the discretionary function exception, it could have provided specific immunity.

The discretionary nature of a decision to place a warning sign must be determined case by case. Immunity may be established by governmental defendants who can show that the challenged decision was discretionary because it resulted from a policy oriented decision-making process. If the counties engaged in this decision-making process, the courts may not judge the wisdom of their decisions. That judgment is left to the political process.

*Peavler*, 528 N.E.2d at 47 (emphasis added) (citation omitted).

Thus, governmental decisions regarding placement of warning signs on the public highways are not *per se* discretionary and immune from tort liability. Rather, it is the absence of a "policy oriented decision-making process" that exposes a governmental entity to tort liability.

■■ We find the case before us an example of liability due to the absence of a policy oriented decision-making process in regard to the placement of traffic signs at unmarked, rural intersections in Adams County. Before explaining why, we note that the parties dispute the propriety of jury instruction # 28, in which the trial judge delegated to the jury the immunity question. Delegation was error, because immunity is a question of law to be decided by the court. *Peavler*, 528 N.E.2d at 46. That error, and any error in the substance of the instruction were harmless, however, because if a trial judge erroneously submits a question of law to the jury, the error is harmless if the jury renders a correct decision. *See Automobile Underwriters, Inc. v. White* (1934), 207 Ind. 228, 191 N.E. 335, *reh'g denied.* By returning a plaintiff's verdict, the jury rejected the County's immunity defense. We agree with that. Therefore, it was harmless error to make immunity a jury question, and whether instruction #28 correctly stated the law of immunity is a moot question.

■■ The governmental defendant "bears the burden to show that a policy decision, consciously balancing risks and benefits, took place." *Peavler*, 528 N.E.2d at 47. And, because discretionary immunity is an exception to the general rule of liability, it must be narrowly construed. *Id.* at 46. The County did not carry its burden.

The County based its immunity defense on the testimony of Adams County Commissioner Maynard Rich, who had lived all of his sixty-one years in Adams County and had been elected Commissioner in 1984 and re-elected in 1988. Rich described Adams County as rural, with a population of 35,-000, including 4,000 Amish. The County has some 700 miles of roadway, half paved, half stone. Rich testified that on the day of the collision between Price and Robinette, there were 140 unmarked intersections within the County, and that signs would be placed at such intersections upon a citizen's request or if the Commissioners discerned a hazard. According to Rich, the presence of growing corn was considered not a hazard, but rather "seasonal."

The County in 1985 had applied for federal funds to mark the 140 intersections, but was turned down. The County did receive approximately $180,000 in federal revenue-sharing money in 1985 and again in 1986, but spent the money on landfill programs. The cost to install signs at all 140 unmarked intersections would have been five

or six thousand dollars. The annual budget for the County highway department was in excess of $500,000.

Other evidence relevant to this discussion entered through the testimony of Price's witnesses. Rodney Fennig, who had fourteen years of service with the Adams County Highway Department and had become its supervisor the month after the Price collision, knew of no log book or other system for recording complaints about unmarked intersections. Fennig stated the County had no written policy or guidelines regarding the placement of signs at the intersection of stone roads, but that signs would be placed where a stone road intersected a paved road, and that the County did not require farmers to trim back corn crops near intersections.

The testimony of Commissioner Rich showed that the County was not completely unconcerned with its unmarked intersections. The question before us is whether the County's practice of responding to citizen complaints or observations of the Commissioners establishes the policy oriented decision-making process required by *Peavler.*

Turning to relevant post-*Peavler* cases for guidance, we see this is not a case in which the governmental entity showed that it had received, and considered, the advice of a traffic engineer. *Cf. Mullen v. City of Mishawaka* (1988), Ind.App., 531 N.E.2d 229, *trans. denied.* Rather, we see a governmental entity that "has not shown that it consciously balanced risks and benefits to arrive at a decision not to place warning signs...." *Cromer v. City of Indianapolis* (1989), Ind.App., 540 N.E.2d 663, 666.

The County presented no evidence that it had ever considered the need to install signs at the intersection of 100 W and 200

N. Moreover, considering that the County grouped all its unmarked intersections into a "wait and see" category, the County did not show that its Commissioners had balanced the risk of leaving intersections unmarked, pending complaint, against the benefit of saving money by not installing signs, nor did the County show that it had conducted traffic surveys in order to identify the more heavily-travelled intersections. *See Peavler*, 528 N.E.2d at 48.

Although Commissioner Rich testified that the County spent its federal monies on landfills, he did not testify that the Commissioners weighed the virtues of, and need for, road signs against those of landfills. The record fails to show that the County made discretionary "decisions about policy formation which involve[d] assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources...." *Peavler*, 528 N.E.2d at 45.

Such non-action is not a policy oriented exercise of discretion. By taking no action in regard to intersections in the absence of a complaint, the County overlooked the possibility that the first complaint might be from parties involved in a collision at an unmarked intersection. In our view, under the required narrow construction of immunity, the County's reactive treatment of its rural intersections did not amount to the policy oriented decision-making process mandated by *Peavler.*[1]

Immunity is a threshold issue. Upon a finding that the governmental entity is not immune, "the case may yet be decided on the basis of failure of any element of negligence." *Peavler*, 528 N.E.2d at 46–47. We turn now to those elements.

## II. ELEMENTS OF NEGLIGENCE

■ The County moved for judgment on the evidence at the close of Price's case

---

1. The dissent in *Peavler* argued that the decision implies "that with respect to every point in every road and street in this state, whether it is a curve, a hill, an intersection, or any other type of terrain, the governing body must be able to show that it had an affirmative hearing and made express and affirmative findings that a sign was not necessary at that particular point[,] ... [a] burden no governing body can hope to carry and certainly ... not what the Legislature intended." *Peavler*, 528 N.E.2d at 51 (Pivarnik, J., dissenting). That warning anticipates our holding here, at least with regard to intersections. However, the view was expressed in dissent, and therefore is not controlling. Our decision is compelled by the demand of the *Peavler* majority that the governmental defendant show the exercise of judgment by demonstrating the existence of decision making.

in chief, pursuant to Ind.Trial Rule 50(A)(1), arguing Price had not shown a breach of duty and that Price was contributorily negligent. The trial court denied the motion. The County argues here that denial of its motion was error. However, the County did not renew its motion at a later stage of the proceeding, as permitted by T.R. 50(A)(2)–(4), but rather went on to introduce its own evidence. Therefore, any error in denying the motion is deemed waived. T.R. 50(A)(6); *see, e.g., Poor Sisters of St. Francis Seraph of Perpetual Adoration, Inc. v. Catron* (1982), Ind.App., 435 N.E.2d 305, 306 n. 2.

Because the County briefed the issues of breach of duty, contributory negligence and proximate cause in terms of trial court error in submitting the case to the jury, it could be said that the issues are waived. However, the County's briefs present a cogent argument that Price's evidence was insufficient, and we elect to address the issues on that basis.

 In a civil case where the jury returns a plaintiff's verdict and the trial court enters judgment on that verdict, appellate review looks to the evidence favorable to the plaintiff and inferences reasonably drawn therefrom. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904. We look for substantial evidence of probative value supporting the judgment, neither reweighing the evidence nor judging the credibility of the witnesses. Reversal is proper only where there is no evidence, or reasonable inference from the evidence, on an essential element of the plaintiff's case. *Id.*

## A. BREACH OF DUTY

 Whether a duty exists is a question of law. *Indiana State Highway Comm'n v. Daily Express, Inc.* (1987), Ind. App., 503 N.E.2d 1237, 1239. Here, the trial court correctly recognized the general duty imposed on governmental entities "to exercise reasonable care in designing, constructing and maintaining its highways for the safety of public users." *Id.* (citing

cases). The court properly instructed the jury that if it found the County had control or ownership of the intersection in question, then the County "had the legal duty to use due care to provide and maintain the intersection ... in a reasonably safe condition."

 The due care required of the County is that which an ordinary prudent person would exercise under the circumstances. *Board of Comm'rs of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 131–32, 337 N.E.2d 852, 874, *reh'g denied,* (1976), 167 Ind.App. 96, 340 N.E.2d 373, *trans. denied.* The County stipulated that it "had no field investigation program for the purpose of investigating hazardous conditions, traffic accidents, sight obstructions or other unsafe conditions for the county roads" in general and for the intersection of 100 W and 200 N in particular. Price presented the testimony of traffic engineer Walter Stout, who explained that the "Bible" of traffic control in Indiana is the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways.[2] Stout testified that field investigation is the critical factor in determining the placement of signs at intersections, and that lack of a field investigation program inhibited or frustrated the County from following the teachings of the Manual. Nevertheless, according to Stout, the County's practice of responding to citizens' complaints could serve as a substitute for field investigation, but the County's failure to keep records of such complaints would have inhibited or frustrated its ability to comply with the Manual. Price also elicited the opinion of Highway Supervisor Fennig that the cornfield at the intersection was a hazard to drivers, and of Deputy Sheriff Miller, the investigating officer, that the cornfield obstructed the view of both drivers. In addition, during the testimony of Deputy Miller, Price introduced photographs of the intersection.

We conclude the evidence recited was substantial evidence of probative value suf-

---

**2.** Governmental agencies must follow the Manual. Ind.Code 9–21–4–1. Use of the Manual in tort suits against governmental entities is discussed in *Indiana State Highway Comm'n v. Daily Express, Inc., supra.*

ficient for the jury to decide that the County breached its duty to maintain its roads in a reasonably safe condition. At a minimum, the jury could have determined from the photographs that the exercise of ordinary prudence would have produced a sign indicating the existence of an intersection. *See Elliot v. State* (1976), 168 Ind.App. 210, 342 N.E.2d 674, *trans. denied.*

### B. PROXIMATE CAUSE

When an event is the reasonably foreseeable, natural and probable consequence of an act or omission, the act or omission is a proximate cause of the event. *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719, 727, *on petition for transfer* (1990), Ind., 551 N.E.2d 444. There may be more than one proximate cause of an event. *FMC Corp.*, 526 N.E.2d at 727. Generally, proximate cause is a question of fact. *Id.* The County argues the absence of signs at the intersection was not a proximate cause of the collision, but merely a "condition" that made it possible, citing *Schroer v. Edward J. Funk & Sons, Inc.* (1968), 142 Ind.App. 223, 233 N.E.2d 680, *trans. denied*, 250 Ind. 480, 237 N.E.2d 247.

In characterizing the driving of Price and Robinette as the proximate cause of the collision, the County reiterates the trial evidence concerning the drivers' familiarity with the intersection, their speed before the collision, and what they might have done if there had been some signs posted. Price had no memory of the collision and his driving immediately prior to it. He testified that it was his habit to drive no faster than thirty-five miles per hour on stone roads, and that he had not driven through the intersection that summer. Robinette testified that he approached the intersection at forty or forty-five miles per hour, looked for traffic signs but saw none, then slowed and looked both ways, but saw neither another vehicle nor dust indicating one's presence. Robinette saw Price's vehicle in time to apply his brakes, but not in time to avoid the collision. Other evidence showed the speed limit on both roads was fifty-five miles per hour. Upon this evidence, we cannot say as a matter of law that the collision would have occurred even if there had been some traffic sign posted, whether a stop sign, a slow sign, or the symbol for intersection. *Cf. Schroer, supra; Briggs, supra.* The jury could have reasonably inferred from the evidence presented that the collision would not have occurred but for the absence of a sign, even if neither Price nor Robinette expressly stated the point. *See Briggs, supra.* The County's argument is no more than a request for reweighing of the evidence. We see no reason to overturn the jury's verdict.

### C. CONTRIBUTORY NEGLIGENCE

The Indiana Comparative Fault Act, I.C. 34–4–33–1 *et seq.*, does not apply to tort claims against governmental entities. I.C. 34–4–33–8; *Governmental Interinsurance Exch. v. Khayyata* (1988), Ind. App., 526 N.E.2d 745, 747. Thus, any amount of contributory negligence by Price would have posed a complete bar to recovery. *Khayyata, supra.* Contributory negligence is an affirmative defense, and as such, the burden of proving it fell on the County. *Briggs, supra.* The jury's returning a plaintiff's verdict constituted a negative judgment on contributory negligence, requiring the County to show on appeal that the verdict and judgment were contrary to law, in other words, the evidence was without conflict and led to but one conclusion, contrary to that reached by the jury. *Ashland Pipeline Co. v. Indiana Bell Telephone Co.* (1987), Ind. App., 505 N.E.2d 483, 489, *trans. denied.*

> Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and safety. Lack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which negligence depends, and it must further be shown that the plaintiff's negligent act was a proximate cause of his injury and that he was actually aware of or should have appreciated the risks involved.

*Id.* The County argues that Price was negligent *per se* by violating the require-

**1334**

ment in I.C. 9–21–8–29 that a driver approaching an intersection from the left yield the right-of-way to a vehicle approaching at approximately the same time from the right, and the requirement in I.C. 9–21–5–1 that a driver maintain a reasonable and prudent speed, reducing speed as necessary to avoid collisions and to comply with the duty to drive with due care.

Based on the facts recited above, we cannot say the evidence and the inferences lead only to a conclusion that Price operated his vehicle in violation of these statutes and was therefore contributorily negligent *per se.* The jury could have reasonably inferred that Price failed to avoid the collision not by lack of due care but because his vision of Robinette was blocked by the corn crop, and that a driver eastbound on 200 N and exercising due care would not have even seen the intersection. The question was properly reserved for the jury's determination, and we see no reason to upset its verdict.

### III. SETTLEMENT

Before trial, Price entered into a "Loan Receipt Agreement and Covenant Not To Sue" with Farm Bureau and Robinette, under which Price relinquished his claim against them in exchange for a loan of $30,000 subject to the following repayment provision:

[Price] shall repay the loan to [Farm Bureau], upon his collection of a settlement or judgment by him against [the County], or its insurance company, successors or assigns, but only to the extent that such collection of a settlement or judgment exceeds the sum of [$50,000], there being no obligation to make any repayment for the first [$50,000] of such settlement or judgment, and then such re-payment shall be 50% of all gross sums collected in excess [of] $50,000, until the entire loan is paid in full.

Record at 157.

Upon receiving the jury's verdict for Price of $100,000, the trial court ordered judgment on the verdict, in pertinent part:

[The County] is entitled to a *pro tanto credit* for partial satisfaction of the [$100,000 judgment] for the net amount of the sums actually received by [Price] from [Farm Bureau] pursuant to the said parties' Loan Receipt Agreement. The court finds and orders that the amount of the *pro tanto credit* is $5,000.00 calculated as follows:

1. Verdict amount for judgment — $100,000.00
2. Loan receipt repayment by [Price] to [Farm Bureau] per Loan Receipt Agreement (50% of amount exceeding $50,000.00) — (25,000.00)
3. Pro tanto credit for amount actually recovered by plaintiff from Farm Bureau — (5,000.00)

[Price] will have received full compensation for the sums determined to be due and owing to him as compensatory damages pursuant to the jury verdict in this case as follows:

$30,000.00 gross loan receipt proceeds from [Farm Bureau] plus $70,000.00 net judgment proceeds from [the County] after repayment of $25,000.00 to [Farm Bureau] per Loan Receipt Agreement.

Record at 178–79.

Thus, the trial judge ordered the County to pay Price $95,000, which with the $30,-000 from Farm Bureau amounted to $125,-000, from which Price had to repay $25,000 to Farm Bureau, leaving Price with $100,-000. The County argues somewhat inscrutably that the trial court erred by not reducing the verdict *pro tanto* by $30,000, citing *Manns v. State Dep't of Highways* (1989), Ind., 541 N.E.2d 929. As we comprehend the County's argument, Price would end up with $90,000—$70,000 from the County, of which 50% of the excess of $50,000 must be repaid, that is, half of $20,000, that is, $10,000, leaving $60,000,

which added to the $30,000 from Farm Bureau totals $90,000.[3]

The County quotes *Manns* as follows:

[T]he trial court should make a *pro tanto* adjustment of the amount of any damages determined by the jury verdict, subtracting any consideration received under a covenant not to sue or a covenant not to execute, and enter final judgment accordingly.

*Manns,* 541 N.E.2d at 934. The passage does not support the County's calculations: first, because taking the *Manns* quotation in context, the point being made was that *pro tanto* adjustment is a matter for the trial court, not the jury; and, second, because the passage concerns types of settlement covenants not used in this case.

In regard to loan receipt agreements, the supreme court wrote in *Manns:*

[I]n contrast to settlement proceeds from covenants not to sue or execute, funds advanced pursuant to loan receipt agreements do not constitute partial payments nor satisfactions of judgment. At least to the extent actually repayable from a judgment, loan receipt proceeds should not be subject to *pro tanto* credit against such judgment.

*Manns,* 541 N.E.2d at 933. Based on that analysis, we conclude that the trial court correctly entered judgment against the County for $95,000. Price was entitled to $100,000; he had $30,000 in hand, but after repayment retained only $5,000 in partial satisfaction of the jury's award; therefore, he was entitled to a judgment against the County for $95,000.

AFFIRMED.

GARRARD and RUCKER, JJ., concur.

---

**3.** The County made an argument in the trial court, prior to entry of judgment, for limiting its liability to $70,000. The appellee United Farm Bureau Mutual Insurance Co., insurer of Farm Bureau, was then interpleaded on Price's motion.