**ASHLAND PIPELINE CO.,**
**Defendant-Appellant,**

**v.**

**INDIANA BELL TELEPHONE COMPANY, INC., Plaintiff-Appellee.**

No. 87A01–8609–CV–241.

Court of Appeals of Indiana,
First District.

March 24, 1987.
Rehearing Denied May 6, 1987.

484

Robert F. Wagner, N. Kathleen Wenzel, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for defendant-appellant.

F. Wesley Bowers, David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Ashland Pipeline Co. (Ashland), appeals a judgment of the Warrick Circuit Court, sitting without a jury, in favor of plaintiff-appellee, Indiana Bell Telephone Company, Inc. (Indiana Bell). The judgment, in the amount of $2,762.50, resulted from the severance of Indiana Bell's underground cable by Ashland.

We affirm.

### STATEMENT OF THE FACTS

The facts most favorable to support the judgment are as follows. Through a succession of assignments, Ashland became the owner of an easement located upon certain private property near the intersection of Indiana Highways 61 and 62 in Warrick County, Indiana. Ashland's easement, originally acquired and duly recorded in 1921, runs generally in a north-south direction. At some time during the 1920's, Ashland laid an underground pipeline along its easement. In 1974, Indiana Bell acquired and recorded an easement in the same area, but its easement runs generally in an east-west direction. In 1975, Indiana Bell laid an underground telephone cable along its easement. The telephone cable

crossed over Ashland's pipeline at a point approximately 160 feet west of Indiana Highway 61.

On March 7, 1979, Ashland performed a maintenance project on its pipeline and, during excavation, severed Indiana Bell's telephone cable where it crossed the pipeline. Over three hours of telephone service was lost before Indiana Bell completed splicing the cable together.

Indiana Bell filed its complaint on March 2, 1981, seeking damages of $2,762.50, and alleging negligence and trespass by Ashland. In its answer Ashland denied that it was negligent and averred that Indiana Bell was contributorily negligent in that Indiana Bell had failed to notify Ashland that the telephone cable crossed the pipeline.

A bench trial was held on October 17, 1985. The evidence disclosed that, although Indiana Bell's record of the 1975 work order regarding the underground cable provided for a warning sign at the point where the cable crossed the pipeline, the only warning signs in the area at the time Ashland severed the cable were approximately 600 feet east and 500 feet west of the site in question. An Indiana Bell employee testified as to the procedures followed in receiving and responding to requests for underground cable locations, and there was evidence that Ashland had requested such information on March 7, 1979. Other testimony related that Indiana Bell was aware of the pipeline when it laid the cable, but did not know that Ashland was the owner. Although the cable was severed within a few feet of both a vent pipe and an aerial marker pertaining to the pipeline, the evidence was conflicting whether they were in place when Indiana Bell laid the cable.

Ashland's evidence related that it relies on those who acquire easements subsequent to its own to notify it so that potential problems may be avoided. An Ashland employee testified that it is Ashland's policy to determine and notify any and all concurrent easement holders before installing new pipelines, but when maintaining an existing pipeline, as is involved here, Ashland assumes any concurrent easement holder has notified Ashland of its presence. An Ashland supervisor testified that the March 7 maintenance project was not an emergency situation, but had in fact been planned one to two months before. He further testified that Ashland did not research the county recorder's documents to determine the presence of any concurrent easements; instead, the Ashland work crew conducted an on-site visual inspection. Having noticed telephone lines strung on poles overhead, and not encountering any signs warning of cables underground, the work crew assumed there were none and excavated, whereupon the underground cable was severed.

The trial court entered its ruling and judgment on October 21, 1985. The trial court found that both easements had been duly recorded, but neither Ashland's nor Indiana Bell's easement was exclusive. The trial court also found that, while Ashland was lawfully upon its own easement making necessary pipeline repairs, Indiana Bell's recorded easement was sufficient notice to impose a duty on Ashland to exercise reasonable care. Ashland having breached that duty by not locating the underground cable prior to the excavation, the trial court entered judgment in favor of Indiana Bell in the amount of $2,762.50. From that judgment Ashland instituted this appeal.

## ISSUES

Ashland presents the following issues for our review, maintaining that the trial court erred in:

I.  Ruling that Indiana Bell's easement, acquired and recorded subsequent to Ashland's easement, was sufficient notice to impose a duty on Ashland to exercise reasonable care;

II.  Concluding that Ashland was negligent under the circumstances;

III.  Concluding that Indiana Bell was not contributorily negligent under the circumstances; and

IV.  Relying upon an improper measure of damages, resulting in an award

of excessive damages to Indiana Bell.

## DISCUSSION AND DECISION

### ISSUE I: *Imposition of Duty*

Ashland claims the trial court erred in concluding that Indiana Bell's recorded easement was sufficient notice to impose a duty on Ashland to exercise reasonable care. The basis for this claim is Ashland's assertion that recordation of an easement is designed to give notice to a subsequent grantee, not a prior grantee such as Ashland.

The law recognizes two kinds of notice. Constructive notice is a legal inference from established facts, while actual notice is that directly and personally given to the person to be notified. *Wienke v. Lynch* (1980), Ind.App., 407 N.E.2d 280. Actual notice, in turn, is divided into two classes: express, which is direct communication; and implied, which is inferred from the fact that the person charged had means of knowledge which he did not use. *Altman v. Circle City Glass Corp.* (1985), Ind.App., 484 N.E.2d 1296, *trans. denied.* Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. *Id.* (quoting *Mishawaka St. Joseph Loan and Trust Co. v. Neu* (1935), 209 Ind. 433, 196 N.E. 85).

Ashland correctly states that recording acts impart constructive notice only to those who claim through or under the grantor in question, and not prior grantees. *Piel v. DeWitt* (1976), 170 Ind.App. 63, 351 N.E.2d 48. IND.CODE 32–1–2–16 provides that every conveyance of an interest in land shall be recorded, and shall take priority according to the time of its filing, and any conveyance shall be void as against a subsequent conveyance to a bona fide purchaser who has first recorded his instrument. The purpose of the statute is to give constructive notice to subsequent purchasers/transferees of the prior purchasers/transferor's interest in the real estate; the subsequent purchaser/transferee is bound by the recording, whether or not he has actual notice. In addition, the recorded instrument is only notice, whether actual or constructive, of the existence and record of such instrument, and of the contents, *not* of the instrument itself, but *only* of such record. *Lowry v. Smith* (1884), 97 Ind. 466. In short, recording involves matters of title.

The trial court found both Ashland and Indiana Bell possess non-exclusive easements which are duly recorded. This court has held that each concurrent easement owner has the right to make reasonable repairs, alterations, and improvements to the easement so long as such do not injuriously affect his co-owner. *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366. This duty exists even though the co-owners did not acquire their easements contemporaneously. *See id.* Ashland cites no authority for the proposition that, as a grantee of a non-exclusive easement, it was entitled to be notified of all subsequent grantees of similar easements over the same property. As a general rule, a landowner who has granted an easement in his land may grant subsequent easements in the same land, so long as the subsequent easements are neither inconsistent with nor a burden upon the prior easement. *Moseley v. Bishop* (1984), Ind. App., 470 N.E.2d 773.

The instant case involves a question of negligence; it does not involve a matter of title. Both easements being general and non-exclusive, it is of no consequence that Ashland's easement was recorded prior to Indiana Bell's. Therefore, the trial court did not err in imposing a duty upon Ashland to exercise reasonable care in both ascertaining the identity and locating the interests of any concurrent easement owners, such as Indiana Bell.

### ISSUE II: *Negligence of Ashland*

Ashland argues that, absent knowledge or notice of Indiana Bell's status as a concurrent easement owner, any acts or omissions by Ashland could not constitute negli-

gence. Having determined that the trial court did not err in imposing a duty upon Ashland to exercise reasonable care, it remains to be resolved whether Ashland breached that duty.

Ashland correctly cites *Hunsberger v. Wyman* (1966), 247 Ind. 369, 373, 216 N.E.2d 345, 348, for the proposition that "[i]n order for an act or an omission to constitute negligence, a person to be charged must have knowledge or notice that such act or omission involved danger to another." However, in *Hunsberger* our supreme court went on to state that "[t]he foundation of liability is knowledge, or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril." *Id.* (quoting 21 *I.L.E. Negligence* sec. 4 (1959) at 266); *accord State v. Totty* (1981), Ind.App., 423 N.E.2d 637, *trans. denied.* Thus, the means of knowledge combined with the duty to utilize that means equate with knowledge itself. *Altman, supra.* The question then arises whether the person charged with the duty to inquire had knowledge or means of knowledge of which he did not avail himself, so that knowledge must be implied; such is a question of fact for the trier thereof. *Id.* In cases tried by the court, we will not set aside the findings or judgment of the trial court unless such findings and judgment are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A).

In examining the question of what constituted reasonable care by Ashland, whether it investigated recorded instruments may be relevant to the steps a reasonable person would have taken, but it is neither exclusive nor exhaustive, as it would be in a question involving title. In determining reasonable care, several things may be expected of a person in order to inform himself of other rightful, concurrent, subterranean land uses, one of which may be researching recorded instruments and other public records. Other precautions may be an examination of the land itself, an inquiry of the servient estate owner, as well as a general inquiry of all utilities known to operate in the area.

In support of its assertion that it did not breach its duty, Ashland points out that: it conducted on-site inspections of the area prior to excavation and noticed no warning signs; it consulted its maps and charts to determine the location of underground cables and pipes that it knew were in the area; it noticed the overhead telephone cables at the site and assumed none were underground; and, because of business custom and its prior easement, Ashland assumed no other underground installation was present at the site.

Our review of the evidence shows that Indiana Bell had a procedure for receiving and responding to requests for locations of underground cables and received thousands of such requests yearly. Indeed, there is evidence that Ashland made a request for the area in question on the date the cable was severed, but began excavating before the information was provided. Ashland concedes that the maintenance to the pipeline was not an emergency situation, but in fact had been planned one to two months prior to March 7, 1979. Despite this advanced scheduling, Ashland's investigation consisted only of on-site inspections in the immediate area; it did not contact the landowner to determine the presence of other underground utility easements, nor did it research the recorded property documents. It merely relied upon the assumptions that overhead telephone cables meant none were underground and that anyone who had acquired a concurrent easement in the fifty-plus years since Ashland had contacted it. Ashland cites no authority for these assumptions other than such was its business practice. While evidence of custom may be considered by the trier of fact in determining what is or is not negligent conduct, it does not establish a standard of care. *P–M Gas & Wash Co. v. Smith* (1978), 178 Ind.App. 457, 383 N.E.2d 357; *trans. denied.* Rather than relying upon assumptions, we believe the better rule to be that it is the party who digs who bears the risk of encountering utility cables and pipes if it proceeds without consulting potentially affected services. *See Cincinnati Bell, Inc. v. Cooper* (1985), 23 Ohio

Misc.2d 9, 491 N.E.2d 411. Ashland may not, as a matter of law, claim immunity from liability in reliance upon a fifty-year-old recorded instrument. Again, both easements involved here were non-exclusive and general, that is, they merely gave the parties the rights to an easement over, under, and across the land without specific boundary locations. Both parties, one a pipeline company and the other a utility, must be aware of the proliferation of underground conduits in this century.

Negligence is a question of fact for the trier thereof. We believe the evidence is sufficient to prove that Ashland breached its duty to exercise reasonable care in locating Indiana Bell's cable.

ISSUE III: *Contributory Negligence*

Ashland claims the trial court's judgment is contrary to law in that Indiana Bell was contributorily negligent.

■ When a judgment is attacked as being contrary to law, we neither consider credibility of witnesses nor weigh the evidence. Rather, we look solely to the evidence most favorable to the judgment, together with all reasonable inferences therefrom, and it is only when this evidence is without conflict and leads to but one conclusion and the trial court reached a contrary conclusion that we will reverse that decision as being contrary to law. *Litzelswope, supra.*

■ Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and safety. Lack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which negligence depends, and it must further be shown that the plaintiff's negligent act was a proximate cause of his injury and that he was actually aware of or should have appreciated the risks involved. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205.

■ Ashland contends that Indiana Bell's act of crossing the pipeline with the telephone cable, coupled with its omitting to notify Ashland either directly or by a warning sign, created the situation that resulted in the severed cable.

The trial court noted that neither party presented any authority that required the marking of underground utilities. Regarding Ashland's argument that business custom mandated that Indiana Bell contact Ashland before installing the cable, we reiterate that such evidence does not establish a standard of care. *P–M Gas & Wash, supra.* The evidence was conflicting as to whether Ashland's marker was in place at the time of Indiana Bell's installation. Moreover, there was evidence that Indiana Bell had placed a warning sign at the site of the cut, but the sign had been removed. Indiana Bell's work order for the cable installation provided for a warning sign at the point where the cable crossed the pipeline. At trial, the following colloquy occurred between the trial court and an Indiana Bell employee who testified regarding the cable installation:

"COURT: If you put [the warning sign] out in the field, I probably know who took it down.

WITNESS: There would have been no question about it.

COURT: [The property owner] would have taken it down.

Okay, I have no other questions. I understand it now."

*Record* at 295.

Contributory negligence, like negligence, is to be decided by the trier of fact. Based on our review of the evidence, we do not believe the judgment of the trial court is contrary to law.

ISSUE IV: *Excessive Damages*

Ashland claims the amount of damages was excessive and was based upon improper evidence. Specifically, Ashland argues that the damage award includes lost gross profits and was based on statewide computation, not just the area served by the severed cable.

■ No particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record; however, an award may not be based upon

mere conjecture, speculation, or guesswork. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, *trans. denied.* Damages for loss of use are measured by fair rental value but may be measured by lost profits where profits are ascertainable, although mathematical certainty is not required. *Farm Bureau Mutual Insurance Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537, *trans. denied.* Even a proper award of lost profits must be confined to a loss of net profits. *Prudential Insurance Co. v. Executive Estates, Inc.* (1977), 174 Ind.App. 674, 369 N.E.2d 1117, *trans. denied.*

■ Of the total damage award of $2,762.50, $1,836.19 resulted from circuit outage and the balance was attributable to the attendant costs of repairing the cable. Circuit outage represents the value of lost revenue for a particular circuit during the period of time the circuit was not in service. Indiana Bell presented the testimony of two witnesses, an accounting supervisor and a tariff manager, to support its claim for circuit outage damages. The total number of circuits that were out of service was 137, and they were out of service on March 7, 1979 for 3¼ hours, from 10:45 a.m. to 2:00 p.m. Indiana Bell compiles traffic studies, reflecting the number of long-distance telephone messages passing through a certain trunk group between two particular points at particular times during a day. This sampling is done daily, and is used for revenue rate purposes before the Indiana Public Service Commission. The computation used here was based upon the previous entire year's usage. It reflected state-wide usage, and was not restricted to the Boonville area.

In computing its estimated lost revenue, Indiana Bell showed there is an average of 51 telephone messages per circuit per day. The number of messages that would have traveled through each circuit during the outage period was 12.7. Multiplied by the total number of affected circuits, 137, the number of messages that would have traveled through all circuits was 1,739.9. Based upon the chargeable rate, Indiana

Bell estimated its circuit outage to be $1,836.19, which the trial court accepted.

The use of economists, who rely upon statistical analysis, has been utilized in wrongful death and personal injury suits for some time, and damage awards based on their testimony have been approved by the courts. *Richmond Gas Corp. v. Reeves* (1973), 158 Ind.App. 338, 302 N.E.2d 795; *State v. Daley* (1972), 153 Ind.App. 330, 287 N.E.2d 552, *trans. denied.* Factors such as mortality tables (used to project life expectancy), rate of inflation, present value, and projected wages and earnings are relevant and admissible evidence. Based upon these factors, an economist is permitted to testify as to the economic value of the tort victim, although the factors relied upon may never come to pass. The person may not live to the average life expectancy. He may have become unemployed. The rate of inflation may drastically fluctuate. Nevertheless, such analysis is permitted and utilized.

Here, a severed cable would clearly cause Indiana Bell a loss of revenue unless, by a peculiar set of circumstances, the affected telephone customers agreed in unison not to place any calls during the outage period. Concededly, there are localities where a smaller volume of message traffic occurs; however, there are almost certainly localities where the volume is higher. We are aware of the fact that Boonville is approximately 15 miles from Evansville, a large metropolitan area. While it may not be the largest community in Indiana Bell's service area, it is by no means the smallest. We are of the opinion that the evidence is sufficient to support the damage award.

Accordingly, for the foregoing reasons, the trial court's judgment is in all things affirmed.

Judgment affirmed.

RATLIFF, C.J., and GARRARD, P.J., concur.