The **KROGER COMPANY SAV-ON STORE**, Appellant,

v.

Jacqueline **PRESNELL**, Appellee.

No. 4–885A232.

Court of Appeals of Indiana, Fourth District.

Nov. 17, 1987.

Rehearing Denied Jan. 5, 1988.

**539**

Jerdie D. Lewis, Lewis and Lewis, Terre Haute, for appellant.

Harry A. Wilson, Jr., Wilson & Kehoe, Indianapolis, for appellee.

MILLER, Presiding Judge.

Jacqueline Presnell purchased an outdoor chaise lounge chair from the Kroger Sav–On Store in Terre Haute, Indiana. She took it home to her cement patio, set it up, and attempted to sit in the chair when it collapsed. Presnell fell to the patio floor and she sustained neck, spine, back and shoulder injuries which constitute a 30% permanent partial disability to her body as a whole. Presnell brought a strict products liability suit against Kroger, and after jury trial, was awarded $485,000.00 in damages. Kroger now appeals claiming multiple errors.

We affirm.

### FACTS

On May 5, 1980 Jacqueline Presnell, 42 years old, purchased an outdoor lounge chair from The Kroger Company Sav–On Store located at Plaza North, Terre Haute, Indiana. No instructions for use were included with the chair. Presnell took the lounge chair home and later that evening placed the chair on the cement patio of her home. The chaise lounge chair is con-

structed so that when not in use, the supports for the user's back and legs fold upon the seat, and the chair legs fold underneath the seat. The leg and back supports are constructed so that either may be used to support the user's legs or back depending upon the height to which the supports are elevated and latched by means of ratchet mechanisms. In her first attempt to use the chair, Presnell placed the chair on its side, unfolded it, opened the legs until resistance was met in a vertical position, turned the chair upright, and, while she was in the process of sitting down, the chair collapsed. Presnell fell approximately nine inches and struck the cement floor of the patio.

Presnell experienced excruciating pain, crawled into her home and remained on the floor for two hours. The next day Presnell went to work at Columbia Record, where she was employed full-time as a mail sorter, and reported her injury. She was sent to the factory dispensary, then to the doctor, and finally to the hospital where x-rays and a myelogram were taken. Presnell had herniated discs and a laminectomy was later performed on both sides of her spine. Continued medical problems involving Presnell's neck, spine, back, and shoulder occurred over the next three years. Presnell sustained a fifteen percent permanent partial disability to her body as a whole from the neck condition and another fifteen percent permanent partial disability to her body as a whole from the back injury. In addition, Presnell developed epilepsy and experienced numerous emotional problems resulting in several hospitalizations and a suicide attempt.

Presnell filed a products liability suit[1] against Kroger on July 18, 1980 claiming the lounge chair she purchased was defective and unreasonably dangerous because of Kroger's failure to give any instructions or warnings specifically about how to open the lounge chair to ensure that the locking devices were properly engaged before use and that without proper instructions or warnings the danger of the chair's collapse was not apparent to the uninformed user of

1. The Indiana Products Liability Act, IND.CODE 33–1–1.5–1.

the chair. Presnell also alleged she suffered permanent personal injuries and damages as a result of the chair's collapse, and that Kroger's acts were the proximate cause of the lounge chair's collapse.

Kroger's answer claimed Presnell misused the product by failing to put the legs of the chair in the proper position before sitting down on it. Kroger also alleged the danger of the chair's collapse and the manner and method of opening the chair, were open and obvious and therefore Kroger was under no duty to warn or instruct Presnell how to open the chair. In addition, Kroger contended that the accident occurred on May 5, 1980 and that the statutory provision of the Products Liability Act providing a product is defective for a failure to warn was an amendatory provision effective in 1983, after Presnell's accident occurred.

Presnell's jury trial was scheduled for May 14, 1985. Before trial on that morning, Presnell moved to strike the words "of negligence" from the title of her contentions and to proceed to trial solely under the "strict liability" section of the Indiana statute. Presnell's motion was granted over Kroger's objections that her theory had changed from negligence to strict liability and that her motion was not timely. The trial court denied Kroger's motion for continuance. After a one week trial, the jury returned a verdict in favor of Presnell and against Kroger in the amount of $485,000.00. On May 23, 1985, the trial court entered judgment on the verdict.

## ISSUES

Kroger raises the following issues for our consideration on appeal:

I. Whether the trial court erred in permitting Presnell to strike the words "of negligence" from the title of her contentions on the morning of trial and in denying Kroger a continuance because Presnell changed her theory from negligence to strict liability.

II. Whether the trial court erred in overruling Kroger's objections to questions permitting Presnell's expert design engineer to give his opinion that Kroger

should have included, as part of the lounge chair's design, instructions on how to open the chair for use.

III. Whether the trial court erred in denying Kroger's Motion for Judgment on the Evidence at either the close of Presnell's evidence or the close of all the evidence.

IV. Whether the trial court erred in giving the jury Presnell's tendered instructions numbers 1, 2, 5, and 8 because the language of these instructions were similar to the language of the 1983 amendments to the Indiana Products Liability Act which was not in effect on the date of Presnell's accident.

V. Whether the jury's verdict is supported by sufficient evidence or is excessive.

VI. Whether the trial court erred in refusing to grant Kroger a new trial.

## DECISION

### I. *Change of Theory from Negligence to Strict Liability*

Kroger argues the trial court erred in permitting Presnell, immediately before trial, to strike the words "of negligence" from the title of her contentions because this changed Presnell's theory from negligence to strict liability. Kroger claims it was prejudiced because it prepared its defense on the theory of negligence and the trial court's action denied Kroger the defense of contributory negligence. Presnell responds that the theory of strict liability was tried by consent and the record clearly reveals Kroger had known for four years before trial that Presnell was relying on both Section 402A of the Restatement of Torts, Second, and negligence theories. Presnell asserts the removal of the negligence issue lightened the burden of Kroger's defense rather than increasing it, so Kroger could not have been prejudiced by the removal of negligence as an alternate theory of recovery. We agree.

The record reveals the following facts relevant to the question of whether Kroger was adequately informed that Presnell was bringing her cause of action against Kro-

ger on two alternate theories, negligence and strict liability: (1) Presnell alleged in her original complaint, filed on July 18, 1980 that she "removed the lawn chair from its package, opened it up and sat down on the chair, and the chair gave way because of faulty design or faulty manufacture, causing plaintiff to fall backward, causing her injury". Record p. 27; (2) at a pre pre-trial conference, Presnell contended in writing that her "action is brought under Restatement of the Law of Torts, Section 402A, and that her injuries were caused by negligent design ... and for failure to give adequate and sufficient instructions on setting the chair up ... or in the alternative, giving or supplying a warning of the danger inherent in the failure to properly engage and secure the support legs in a locked position," Record p. 47; (3) at the pre pre-trial conference, both Presnell's and Kroger's counsel agreed that the contested issues were as follows, "the applicability of § 402A Restatement of the Law of Torts; whether such liability applies; whether there was any faulty design of the involved chair; whether defendant was guilty of any alleged negligence, and contributory negligence on the part of the plaintiff," Record p. 45; and, finally, (4) Presnell filed her amended contentions on July 2, 1984 in which she alleged the lounge chair was in a defective condition unreasonably dangerous because of defective design, failure to instruct, and failure to warn pursuant to IND. CODE § 33-1-1.5-1 et seq., where the Restatement of the Law of Torts, Section 402(A) is codified. Record p. 129-131.

The record indicates that Kroger should have been well aware, long before trial, that Presnell's suit was based on two theories of liability, both strict liability and negligence. Presnell's amendment of her contentions on the morning of trial merely removed the words "of negligence" from the title which read "Plaintiff's Specifications of Negligence". The wording of the contentions was not changed. Given these facts, we fail to see how Kroger could have been prejudiced by the removal of negligence as an *alternate* theory of liability. Kroger failed to show the trial court in

what way it has been denied substantial rights. We find no error in the trial court's granting of Presnell's motion to amend or in the trial court's denial of Kroger's motion for continuance.

■ With respect to Kroger's claim that the trial court improperly denied its motion for continuance, we first note Indiana Rules of Procedure, Trial Rule 53.5 provides in part:

"Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence."

The granting of a motion for continuance is within the discretion of the trial court. *Indiana Alcoholic Beverages Commission v. State* (1978), 269 Ind. 48, 379 N.E.2d 140. Absent a showing of clear and prejudicial abuse of discretion, the trial court's ruling on a motion for continuance will not be disturbed on appeal. *Ayr–Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335. A general allegation unsupported by clear and convincing argument should not be the basis for reversing the trial court's action in denying a motion for continuance. *Id.* 300 N.E.2d at 339. After a review of the record, we find Kroger was fully informed prior to trial that Presnell was proceeding under both negligence and strict liability theories. We therefore find no error in the trial court's denial of Kroger's motion for continuance.

II. *Design Engineer's Testimony*

Kroger argues the trial court erred in overruling its objections to questions permitting Presnell's expert design engineer, Professor Donald Cole, to give his opinion that Kroger should have included, as part of the lounge chair's design, instructions on how to open the chair for use. Presnell responds that the trial court exercised its discretion in admitting the challenged testimony, and asserts that Kroger has waived this issue on appeal under the authority of *Topper v. Dunn* (1961), 132 Ind.App. 306, 177 N.E.2d 382.

Presnell's counsel propounded the following questions to her expert design engineer

witness Donald L. Cole, a professor of mechanical engineering and basic engineering design at the University of Louisville:

"Q. All right, sir, will you state your opinion with regard to why instructions are necessary with regard to that particular piece of equipment, towit: Plaintiff's Exhibit 2 ...

Q. With regard to what the warning should say, sir, where without making any design changes in the chair could the warning or instructions be placed? ...

Q. Would it take any different type tooling to put the instructions that you're talking about, sir? ..."

Record p. 424–25.

The record also reveals that neither Kroger's Motion to Correct Errors nor its Appellant's Brief or Reply Brief sets out the answer, or even the substance thereof, given by Professor Cole to any of the three questions asked and objected to. In addition, none of the three above questions are specifically discussed nor is the witness' response set out in Kroger's Statement of Facts and Grounds attached to its Motion to Correct Errors.

In *Topper v. Dunn*, this court stated: "It is axiomatic that the specification in regard to the alleged error with reference to evidentiary questions must specifically set forth the question the objection or the ruling of the trial court and the answer of the witness to the objected to question. *Fuehring et al v. Union Trust Company of Indianapolis et al.* (1946), 117 Ind.App. 246, 249, 69 N.E.2d 141; *Guerrettaz et al. v. Public Service Co. of Indiana, Inc.* (1949), 227 Ind. 556, 563, 87 N.E.2d 721; *see also* cases cited in Flanagan, Wiltrout, and Hamilton's Indiana Trial and Appellate Practice, Sec. 1812, Comment 8."

*Topper, supra,* 132 Ind.App. at 317, 177 N.E.2d at 388. *See also Kimmick v. Linn* (1940), 217 Ind. 485, 29 N.E.2d 207 (where error was predicated upon admission or rejection of testimony, motion for new trial should set out both the question and the answer, if there was one, and the ruling of the court with respect thereto).

■ The appellant is required to affirmatively present a case of error and the reviewing court is not authorized to search the record for grounds to reverse. *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155. The appellant has the burden not only of proving that error occurred in the inclusion or exclusion of evidence, but also must demonstrate that the error was prejudicial because it affected a substantial right of the party. *Santini v. Consolidated Rail Corp.* (1987), Ind.App., 505 N.E.2d 832. Kroger's objections and argument to both the trial court and to this court wholly fail to meet this burden.

After setting out the questions and its objections to each, Kroger argues in its brief as follows:

"First, there was no hidden or latent defect, and how and in what manner the legs should be opened up and put in proper position was open and obvious to customers, including Presnell. Secondly, this witness was permitted to express an opinion on the failure to warn or instruct without there being any evidence that the outdoor lounge chair was 'unreasonably dangerous' which is not a matter for expert opinion, but a matter for a jury to determine.

As the Indiana Supreme Court said in the *Bemis Co., Inc. v. Rubush* case, (1981) 427 N.E.2d 1058 at 1063, a seller is not required to warn when the danger, or probability of danger is generally known and recognized. So Presnell, in this case, knew at the time she purchased the chair that there was no warning or instructions as to how and in what manner the legs should be opened up, put in position and the chair set up. As previously stated, Presnell testified that she knew there was no warning or instructions at the time of purchase and subsequent thereto, and Presnell did not think it was necessary to ask anybody at Krogers how to open up the legs on the chair.

A witness should not be permitted to give an opinion where the jurors are as well qualified to form an opinion upon the facts as the witness. *Green v. State* (1981) 422 N.E.2d 1190." Appellant's Brief at 53–54.

Without knowing the answers, or their substance, and with no coherent argument as to how the answer prejudiced Kroger's defense, we must treat this issue as waived.

### III. *Motion for Judgment on the Evidence*

Kroger argues the trial court erred in denying its Motion for Judgment on the Evidence at the close of Presnell's evidence, or, alternately, at the close of all the evidence. Kroger made its motion on four alternate grounds: (a) Kroger had no duty to warn because the defect—how and in what manner to open and place the folding legs under the chair—was open and obvious as a matter of law pursuant to *Bemis, Co. Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058; (b) the evidence was insufficient to establish liability under either Section 402A or the Indiana Products Liability Act; (c) neither the design or the mechanical condition of the lounge chair were defective; and (d) the claimed defect was failure to warn and Presnell had knowledge at the time of purchase that the chair had no warning or instructions. Presnell responds that the trial court's denial of Kroger's motions for judgment on the evidence were correct because Presnell had presented evidence on every element necessary to sustain a judgment in her favor.

In reviewing a trial court's ruling on a motion for judgment on the evidence, this court is bound by the same standards which governed the trial court's decision in the first instance. *Tancos v. A.W. Inc.* (1986), Ind.App., 502 N.E.2d 109; *Senco Products, Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561. A trial court may properly grant a defendant's motion for judgment on the evidence only when there is no evidence on one or more of the critical elements of the plaintiff's cause of action or the evidence with respect thereto is without conflict and leads only to inferences in favor of the defendant. Indiana Rules of Procedure, Trial Rule 50(A); *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 387. Thus, where there is a failure of proof on an essential element of the plaintiff's case, the trial court is correct in taking the case from the jury. *Craven*

*v. Niagra Machine and Tools Works, Inc.* (1981), Ind.App., 417 N.E.2d 1165, *reh. granted on other grounds*, (1981), 425 N.E.2d 654, *trans. denied.* The trial court may consider only the evidence and reasonable inferences most favorable to the non-moving party. *Perry v. Leo P. Knoerzer Corp.* (1984), Ind.App., 472 N.E.2d 223. If there is any probative evidence or reasonable inference to be drawn from the evidence sufficient to support the claim, or if there is evidence allowing reasonable people to differ as to the result, then judgment on the evidence is improper. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205.

Kroger claims it had no duty to warn prospective users of the danger inherent in the failure to properly engage and secure the support legs of the chair in a locked position before attempting to sit down in the chair. Kroger asserts there was no evidence of a hidden or latent defect and because the lack of warning was open, obvious, and known by Presnell at the time of purchase then no recovery can be had as a matter of law under the holding of *Bemis, supra.*

 Presnell responds that Kroger's reasoning, that lack of warning was the defect and the absence of a warning was open and obvious to purchaser Presnell, would effectively eliminate recovery in all cases of failure to warn. We agree with Presnell's contention and note that it is the *danger* posed to the user which must be open and obvious to the consumer to effectively assert this defense, not the absence of a warning of the danger or instructions on how to avoid the danger. Presnell contends *Bemis* is not applicable to the facts of this case and sufficient evidence was adduced at trial on each of the elements of this strict liability action necessary to a judgment for Presnell. We agree and conclude that Presnell presented evidence that the danger associated with not properly engaging and securing the support legs of the chair into a locked position, specifically the possible collapse of the chair and the potential resulting injuries, were not open and obvious. This evidence was sufficient to preclude granting of Kroger's motion

for judgment on the evidence on the basis of the open and obvious defense.

Donald L. Cole, professor of mechanical engineering at the University of Louisville, testified as Presnell's expert witness in mechanical design. He testified that the chair in question was made up of a series of hinges, rachet mechanisms, and detent mechanisms. Professor Cole testified that instructions for the use of equipment are an integral part of its mechanical engineering and design. He stated that instructions were needed with this chair because it differs from the ordinary folding chair in which the legs are automatically in the correct place for use when the chair is unfolded. When the legs of this chair are unfolded to a vertical position, it is still necessary to push the legs against resistance to about 15 degrees past the 90 degree vertical position to force the domes of the locking device into their depressions. Professor Cole testified that these domes and depressions are not visible to the user and that with most products, the user is not intended to use excessive force. Professor Cole concluded that the user would be led to believe that when the legs are vertical and resistance is encountered, the chair is properly opened and ready for use. Instructions were necessary, therefore, to instruct the user to push the legs against the resistance to 15 degrees past the vertical position to lock the domes into the depressions of the ratchet mechanism.

One of the critical points of Professor Cole's testimony is that even though users are generally aware of the dangers of failing to properly open and secure the support legs of a lounge chair, they believe there is a safe way to do it, namely, by unfolding the legs to a vertical position until resistance is encountered. If people do in fact generally hold such a belief, then it cannot be said, as a matter of law, that the risk of back and neck injury or epilepsy from the collapse of a lounge chair and a fall to the cement patio is open and obvious. As Judge Eschbach, interpreting Indiana law for the Seventh Circuit Court of Appeals in *Corbin v. Coleco Industries, Inc.* (1984), 748 F.2d 411, reasoned:

"Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious."

*Corbin, supra,* 748 F.2d at 417–18.

Both Cole and Presnell testified that the chair legs, when pushed into a 90 degree vertical position, then encountered resistance. We find this testimony was sufficient to make the following issues questions of fact for the jury to resolve: (1) whether Kroger had a duty to warn prospective users of the danger inherent in the failure to properly set up the chair for use; (2) whether the danger inherent in the failure to properly engage and secure the support legs of the chair in a locked position before use was open and obvious; and (3) whether the chair's design or mechanical condition was defective and unreasonably dangerous. We find no error in the trial court's denial of Kroger's motions for judgment on the evidence at the close of Kroger's case and at the close of all evidence.

### IV. *Jury Instructions*

■ The trial court gave as final instructions to the jury Presnell's tendered instructions one, two, five, and eight. Kroger objected to the giving of instructions number one, two, and eight on the grounds that these three instructions are based upon I.C. 33-1-1.5-2 and -3 of the 1983 amendment to the Indiana Products Liability Act. Kroger asserts this statute was not in existence on May 5, 1980 when the accident at issue occurred. However, Kroger does not claim that instructions one, two, and eight are incorrect statements of the law as it existed on May 5, 1980 when the accident occurred. The fact that the language of instructions one, two, and eight is similar to the 1983 amendatory language does not show that these three instructions are incorrect statements of the law in 1980. Kroger has failed to cite any

authority for the proposition, and to properly argue, that mere similarity of language necessarily means the instructions were incorrect statements of the law. We conclude that Kroger has waived consideration of this issue on appeal for failure to make cogent, pertinent argument.

Kroger also objected to Presnell's instruction no. 5 on grounds that strict liability does not apply, either by statute or Section 402A, unless the defect is hidden or latent. As discussed earlier in issue three, it is the danger which must be open and obvious, not the absence of warnings or instructions. In addition, the record shows the court gave Kroger's tendered preliminary instruction No. 1.03 and read it as part of the final instructions. Kroger's instruction No. 1.03 stated that the failure to warn or provide proper instructions was at issue in this case. We conclude Kroger's instruction 1.03 contained the same alleged defect as Presnell's instruction No. 5. Where a party has submitted error similar or the same as that complained of, such error is waived. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *First National Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345.

### V. *Damages*

██ Kroger argues the jury's verdict is not supported by sufficient evidence or, alternately, is excessive. Kroger maintains that the size of the jury's award and the fact that the jury deliberated for a time period of only two hours shows that it was motivated by improper reasons such as prejudice and sympathy in awarding damages in the amount of $485,000.00. In addition, Kroger summarizes the testimony of Dr. Imperial[2] and argues that the doctor's testimony establishes that Presnell had numerous emotional, mental, and psychiatric problems from childhood to the date of trial which are not related to the accident but which nevertheless enlisted the sympathy of the jury.

An appeal of a damage award as excessive is governed by a strict standard of review. We will neither reweigh the evidence nor judge the credibility of the witnesses and will consider only the evidence favorable to the award. *Upchurch v. Henderson* (1987), Ind.App., 505 N.E.2d 455, 457; *Ashland Pipeline v. Indiana Bell Telephone Co.* (1987), Ind.App., 505 N.E.2d 483, 490, (transfer pending). A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Crump v. Rhodes* (1986), Ind.App., 488 N.E.2d 741, 743, *trans. denied.* A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise. *Ashland Pipeline*, 505 N.E.2d at 490; *Lake Monroe Regional Waste v. Waicukauski* (1986), Ind.App., 501 N.E.2d 466, 472.

We acknowledge that a damage award must be referenced to some fairly definite standard, such as cost of repair, market

---

2. Kroger's brief states:

"Dr. Imperial testified at length (Tr. Vol. III pp. 470–653) concerning the emotional, nervous, mental and psychiatric problems of Presnell not related to the accident. To mention a few, she has had recurrent depressive episodes for the last eight years; she was married twice, each ending in divorce; she was depressed and worried about her children from both marriages; a young girl mentally retarded, a son living with his father and two young daughters addicted to alcohol and drugs requiring hospitalization and treatment at Hamilton Center (Terre Haute) and Evansville State Hospital. She had sexual harrassment at work, her supervisor wanted to trade sex for favors. She was raped by a black man and had quarrels and difficulties with her boyfriend. She was despondent, depressed and at times had suicidal ideas. Because Presnell was despondent and depressed she was hospitalized by Dr. Imperial in Regional Hospital Psychiatric or Mental Health Ward for each of the following periods: Oct. 11, 1980 to Nov. 20, 1980, Dec. 8, 1980 to Dec. 30, 1980, and Feb. 17, 1981 to March 17, 1981. (Tr. Vol. III, pp. 582, 587, 593) While in the hospital during the period from Dec. 8–30, 1980, she had a convulsion or seizure, commonly called epilepsy. (Tr. Vol. III 11.3–5 p. 589) Presnell had an epileptic seizure before reaching womanhood, and prior to this accident was admitted to Hamilton Center, Terre Haute, IN for a period of approximately five days for psychiatric treatment for a condition which Presnell described as a 'near nervous breakdown.'" Appellant's Brief at 70–71.

value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances. *Waicukauski*, 501 N.E.2d at 472. Thus, a damage award will be reversed when it is not within the scope of the evidence before the finder of fact. *Ashland v. Pipeline*, 505 N.E.2d at 490; *Upchurch*, 505 N.E.2d at 458. However, the evidence in this case clearly supports a verdict of $485,000.00. The only evidence submitted on the question of damages was submitted by Presnell. This evidence shows Presnell, 42 years old at the time of the accident, attended school for 11 years. She was employed fulltime at Columbia Record as a mail sorter at the time of her injury. Presnell had previously worked as a waitress and factory worker and had no physical difficulty performing her work. During the ten years before her injury, Presnell was physically active and enjoyed swimming, jogging, dancing and bicycling two to three times per week. Presnell had never had any back or neck trouble before the chair collapse on May 5, 1980.

Presnell's back and neck injuries were, with a reasonable degree of medical certainty, caused by her fall when the chair collapsed. She required two separate surgeries and several shoulder manipulations under general anesthesia to treat her back and neck injuries. Presnell has a 15 percent permanent partial disability to her body as a whole from her back injury and another 15 percent permanent partial disability to her body as a whole from her neck condition. Presnell has been given exercises which she must do forever as part of the treatment of her back and neck injuries. She will never be free of pain from these injuries, and cannot do heavy lifting or return to factory work. Presnell introduced evidence of medical expenses in the amount of $83,331.53 without objection.

In addition, Presnell presented evidence that she has epilepsy caused by her injury in the chair collapse on May 5, 1980. Presnell will be required to take Dilantin, an anti-convulsant medication, indefinitely. Dilantin has severe side effects which include the curtailment of the body's ability to produce white blood cells. Dr. McEntaffer testified that Presnell would lose the

sum of $237,600.00 in future wages, reduced to present day value.

Presnell's medical expenses and lost future wages total $320,931.53. The jury could reasonably have awarded the remaining $164,068.47 for pain and suffering, and future medical treatment and expenses. We conclude the verdict was not excessive and is supported by the evidence regarding Presnell's injuries, medical treatment and expenses, pain and suffering, loss of future wages, and the permanent 30% impairment of a woman who was working and supporting herself as well as leading an active physical personal life before her injuries.

VI. *New Trial*

Kroger's final allegation of error is that the trial court erred in refusing to grant Kroger a new trial. Although Kroger has raised this error under the "Issues" section of its appellant's brief, Kroger has failed to address this question in either the argument section of its brief, or reply brief, or in its statement and memorandum in support of the motion to correct errors. We must conclude Kroger has waived consideration of this issue by failing to provide any argument whatsoever.

The judgment of the trial court is affirmed.

NEAL and CONOVER, JJ., concur.