In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-1342

VANESSE FORT, individually and
as personal representative of the
ESTATE OF ERIC K. FORT, Deceased,

*Plaintiff-Appellee,*

*v.*

C.W. KELLER TRUCKING, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 300:CV 228—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED SEPTEMBER 10, 2002 —DECIDED JUNE 5, 2003

Before COFFEY, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Vanesse Fort sued C.W. Kel-
ler Trucking, Inc. for the wrongful death of her husband,
Eric Fort. Before trial, the plaintiff received $2.25 million
under the terms of a loan receipt agreement with Ryder
Integrated Logistics, Inc. At trial the jury awarded Vanesse
Fort approximately $1 million. Keller asked the district
court to setoff the jury award by the $2.25 million. The
district court rejected that request and on appeal, Keller
asserts that setoff is warranted because the $2.25 mil-
lion advanced is not a loan. Specifically, Keller argues that

Fort and Ryder never intended full repayment of the loan, and in any case the jury award was too small to allow for full repayment. Because we find that the parties intended full repayment such that the money advanced was truly a loan, and because money received under loan receipt agreements is generally not subject to setoff, we affirm the district court's ruling. Keller also raises claims relating to the admissibility of the loan receipt agreement, the sufficiency of the evidence, and improper jury instructions, which we also reject.

## I. BACKGROUND

In 1999, C.W. Keller Trucking, Inc. was approved by Toyota Motor Corporation to haul parts to Toyota's Kentucky plant as a subcontractor for Ryder Integrated Logistics, Inc. Keller earned approximately $1.00 per mile and retained control over the trucks used to haul parts. Additionally, Ryder had an owner-operator agreement with E.C. Trucking, Inc., under which E.C. Trucking provided drivers and leased three tractors to Ryder, and in exchange received about $.85 cents per mile to haul Toyota parts to the same Kentucky plant as Keller.

That same year, E.C. Trucking entered into an assets purchase agreement with Keller, acquiring Keller's stock and trucks, as well as Keller's permits, licenses, and certificates necessary for the trucks' operation. E.C. Trucking also obtained Keller's Interstate Common Carrier (ICC) authority and Canadian counterpart, in addition to Keller's subcontractor agreement with Ryder. Following this transaction, E.C. Trucking operated its trucks using Keller's placards and ICC authority, and was legally entitled to use the name "E.C. Trucking d/b/a C.W. Keller Trucking."

On March 15, 2000, Eric Fort died after his car was hit by a truck driven by Jacob Nance. Although Nance had

been assigned to a truck with Keller's placards and ICC authority, it broke down the day before the accident, and Nance used a truck with Ryder's placards and ICC authority. Ryder asserts that use of this truck was unauthorized.

Vanesse Fort (Eric Fort's widow) sued Ryder, Nance, E.C. Trucking, and Keller for wrongful death. Fort then entered into a loan receipt agreement with Ryder releasing all defendants except Keller. Under this agreement, Fort received $2.25 million, but promised to pay Ryder one-third of the money recovered from Keller or Keller's insurer up to a maximum of $2.25 million.

Fort's suit against Keller went to trial. The only issues in dispute were whether Keller was legally responsible for Nance's negligence and if so, how much money the plaintiff should receive. A Ryder representative testified that even though Nance used a truck owned by Ryder, Keller was responsible for the trip as Ryder's subcontractor. Keller argued that it was not in business at the time of the accident, and was therefore not Nance's employer. Also, Keller objected to the court's refusal to admit evidence of the loan receipt agreement to establish that Brad Scroggins, a Ryder employee, was biased against Keller. At the close of evidence, the court instructed the jury regarding the difference between Keller and E.C. Trucking's liability. The jury found Keller liable for Fort's death and awarded Fort's estate slightly over $1 million.

Following the jury verdict, Keller filed a motion for setoff, arguing that as a matter of law the jury award should be offset by the amount that Fort retained from the loan receipt agreement. The district court determined that Keller was not entitled to a setoff and denied the motion. Keller appeals this ruling, and also contests the district court's refusal to introduce the loan receipt agreement into evidence, the sufficiency of the evidence establishing

that Keller was in business at the time of the accident, and the jury instructions regarding the laws governing separate corporate entities.

## II.  ANALYSIS

A.  Setoff from the Loan Receipt Agreement

Indiana courts[1] encourage the use of loan receipt agreements, *see*, *e.g.*, *Scott County v. Vaughn*, 704 N.E.2d 1029, 1032 (Ind. Ct. App. 1998), and define such agreements as follows:

> A loan receipt agreement, in its simplest form, provides that one with potential liability to a claimant will advance funds in the form of a non-interest loan to the claimant in order that the claim may be prosecuted against another who is also potentially liable for the claim. In return for the funds advanced, the claimant agrees that he will not sue or will not seek to enforce a judgment against the lender and will repay the loan according to some formula based upon the claimant's recovery against the other party. Such an agreement, then, serves to limit the liability of one against whom a claim might be pressed and, at the same time, gives the claimant an immediate 'bird in hand' instead of forcing him to await but possible recovery following protracted litigation.

*Burkett v. Crulo Trucking Co.*, 355 N.E.2d 253, 258 (Ind. Ct. App. 1976); *see also American Transp. Co. v. Cent. Ind. Ry. Co.*, 264 N.E.2d 64, 67 (Ind. 1970).

---

[1]  The parties agree that Indiana law governs the setoff issue in this diversity case.

It is against this backdrop that Keller contests the district court's denial of its motion for setoff. Specifically, Keller points out that under the terms of the agreement at issue, Fort received $2.25 million from Ryder, but had to pay back one-third of the amount of any jury award. The jury award was slightly over $1 million thus requiring Fort to repay Ryder approximately $347,377. Keller reasons that the approximately $1.9 million left over ($347,377 subtracted from $2.25 million) should be used to offset Keller's $1 million jury award to Fort (thus reducing Keller's payment to zero) because this amount will never have to be repaid. We are unpersuaded by this argument.

Despite Keller's contentions to the contrary, under Indiana law, whether setoff is warranted generally does not depend on whether all funds advanced under the terms of the loan receipt agreement were repaid. Rather, a setoff entitlement hinges on whether the contract at issue can properly be construed as a loan receipt agreement in the first place; if so, no setoff is allowed. *See American Transp. Co.*, 264 N.E.2d at 67; *Sanders v. Cole Mun. Fin.*, 489 N.E.2d 117*,* 120 (Ind. Ct. App. 1986) ("If the agreement is found to be a loan receipt agreement, the funds received by the plaintiff are not to be credited against a subsequent judgment."); *Barker v. Cole*, 396 N.E.2d 964, 971 (Ind. Ct. App. 1980).[2]

---

[2] In contrast, under other settlement agreements such as covenants not to sue, the claimant is neither required nor expected to repay the funds provided. Therefore, these funds (which are made in partial satisfaction of a judgment) usually must be credited against subsequent awards to prevent double recovery. *See Sanders v. Cole Mun. Fin.*, 489 N.E.2d 117, 120 (Ind. Ct. App. 1986); *Barker v. Cole*, 396 N.E.2d 964, 970 (Ind. Ct. App. 1979); *but see R.L. McCoy, Inc. v. Jack*, 772 N.E.2d 987, 990 (Ind. 2002).

We thus examine whether Fort and Ryder entered into a loan receipt agreement, "look[ing] to the express terms of the agreement to determine the intent of the parties as to the true nature of the agreement." *Barker*, 396 N.E.2d at 971; *see also Sanders*, 489 N.E.2d at 120 ("In determining the correct characterization of the agreement, the intention of the parties to the transaction is relevant. However, once the type of transaction is identified, the effect is established by law.") (citation omitted). The agreement states in part that:

> Ryder will advance to the Estate [$2.25 million] all of which will be repayable without interest only in the event and to the extent that the Estate recovers from Keller or its insurer by trial or settlement; and in that event Thirty-three and a third percent (33 1/3%) of all monies received by the Estate shall be repaid to Ryder until the full amount is repaid.

This type of contract, which contemplates full repayment, is clearly a loan receipt agreement. The fact that repayment is based on a formula (one-third of the jury award rather than dollar-for-dollar repayment) does not make it any less so. *Burkett*, 355 N.E.2d at 258 (noting that loan receipt agreements involve "repay[ment of] the loan *according to some formula* based upon the claimant's recovery against the other party") (emphasis added); *see, e.g.*, *Bymaster v. Bankers Nat'l Life Ins. Co.*, 480 N.E.2d 273, 280 (Ind. Ct. App. 1985) (contract construed as loan receipt agreement even though repayment of a $10,000 loan was required only if plaintiff recovered more than $30,000 from other tortfeasors); *Barker*, 396 N.E.2d at 971 (contract construed as loan receipt agreement even though repayment of a $25,000 loan was required only if plaintiff recovered more than $25,000 from another tortfeasor). Thus, Keller is not entitled to setoff.

Keller contends that notwithstanding the agreement's express terms, neither Ryder nor Fort ever intended full

repayment because Fort's lawyer only asked for $2.95 million at trial, and Fort would have had to recover $6.75 million to repay Ryder in full. We are unconvinced. The record reveals that Fort initially sought $7 million in damages, and Keller has not shown that this figure was unreasonable; additionally, the loan receipt agreement states that Ryder believed there was a "substantial possibility" that Fort would receive a jury award of at least $5 million. As for Keller's assertion that full repayment was impossible because Keller only had $2 million in insurance coverage and no funds of its own, we note that Keller has not pointed us to any evidence in the record that either Fort or Ryder knew of Keller's alleged inability to pay when the loan receipt agreement was negotiated.[3]

Keller further attempts to confuse the issue by arguing that whether a loan has been fully repaid factors into the determination of when setoff is warranted. Specifically, the appellant cites *Manns v. State, Department of Highways*, 541 N.E.2d 929 (Ind. 1989), in which the Indiana Supreme Court stated that "[a]t least to the extent actually repayable from a judgment, loan receipt proceeds should not be subject to *pro tanto* credit against such judgment." *Id.* at 933 (citing *Duke's GMC, Inc. v. Erksine*, 447 N.E.2d 1118 (Ind. Ct. App. 1983)). Keller's emphasis on *Manns* is misplaced. The phrase "actually repayable from a judgment" refers to whether actual repayment "from a judgment" was contemplated at the time the loan receipt agreement was entered into. *Duke's GMC v. Erksine*, which the *Manns* court relied on in making its determination, dictates this reading. In that case, the defendant appealed the trial court's refusal to tender a jury instruction stating that the defendant was entitled to a setoff due in part to a loan receipt agreement between the plaintiff

---

[3] The depositions Keller relies on to establish that Keller had no funds were taken after the loan receipt agreement was signed.

and another tortfeasor. The appellate court found no error because the loan receipt agreement at issue did "not constitute a partial payment or satisfaction of a judgment." *See* 447 N.E.2d at 1122. The court arrived at this decision despite the fact that the plaintiff did not have to repay any portion of his $52,500 loan; repayment was triggered only if the plaintiff was awarded over $300,000, and the jury awarded only $150,000.

*Sanders v. Cole*, 489 N.E.2d 117 (Ind. Ct. App. 1986), also cited in *Manns,* further undermines Keller's position. In that case the plaintiffs received a $200,000 loan, and were obliged to repay 25% of the first $400,000 recovered from other defendants and every dollar in excess of $400,000. *See* 489 N.E.2d at 125 (Garrard, J., concurring). The court declined to require a setoff of the advanced funds, noting that "[t]he parties agree the appellants received $200,000.00 subject to a loan receipt agreement and that amount is not to be applied as a credit since it is repayable." *Id.* (majority). The court made this determination despite the fact that the jury verdict was not sufficient to trigger full repayment of the loan. *Id.* Although *Sanders* differs somewhat from the instant case in that the judgment was ultimately reduced to zero because of setoffs from various covenants not to sue, it supports Fort's argument that setoff is not required merely because a loan is not fully repaid.

Keller also cites *State v. Ingram*, 399 N.E.2d 808 (Ind. Ct. App. 1980), in support of its argument that setoff is barred only if a loan is fully repaid. First, as Keller admits, that opinion was vacated by the Indiana Supreme Court and therefore has no precedential value. *See State v. Ingram*, 427 N.E.2d 444 (Ind. 1981). Second, *Ingram* is clearly distinguishable. In that case, the plaintiff received $3,500 from a lender, but under the terms of the agreement, the lender sought only $1,500 back if the plaintiff recovered at trial. *See* 399 N.E.2d at 809. Thus, it was clear at the

time the contract was formed that the plaintiff was receiving a gift, rather than a loan, of $2,000. By contrast, in the instant case Ryder expected repayment of the *entire* loan.[4]

Because Indiana case law generally does not support Keller's argument that setoff is required even when full repayment was contemplated in the loan receipt agreement,[5] we find that the district court's denial of Keller's motion for setoff was proper.[6]

---

[4] Additionally, Keller relies on *R.L. McCoy, Inc. v. Jack*, 752 N.E.2d 67, 71 (Ind. Ct. App. 2001) for the proposition that portions of a loan that are not actually repayable are subject to setoff. Although *McCoy* was brought under the Comparative Fault Act, and is thus distinguishable from the instant case, we note that the Indiana Supreme Court has recently ruled that setoff in comparative fault cases is not warranted even if the settlement payment provided to the plaintiff is larger than the subsequent jury award. *See R.L. McCoy, Inc.*, 772 N.E.2d 987, 991 (Ind. 2002) ("The point is that the settlement between McCoy and the Jacks had no bearing on Johnson's obligation to pay according to its liability."). Thus, *McCoy* does not bolster Keller's argument.

[5] We note that *Board of Commissioners of Adams County v. Price*, 587 N.E.2d 1326, 1334-35 (Ind. Ct. App. 1992), which Keller failed to cite in its briefs, may provide some support for Keller's position. However, we are not bound by the decisions of a state's intermediate appellate courts if "we have a compelling reason to doubt that they have stated the law correctly." *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001) (determining that various Illinois appellate decisions "did not accurately predict how the Illinois Supreme Court would rule on a guarantor's ability to waive commercial reasonableness"). A careful examination of *Manns* (discussed above) reveals that the *Price* court's holding is a likely inaccurate statement of the rule regarding setoffs from loan receipt agreements.

[6] Because we believe that the Indiana courts already provide sufficient guidance on this issue, we deny Keller's request for

(continued...)

B.  Loan Receipt Agreement as Impeachment Evidence

Keller argues that the district court should have allowed it to introduce the loan receipt agreement to impeach Brad Scroggins, the Ryder manager primarily responsible for overseeing Ryder's business relationships with companies like Keller and E.C. Trucking. More specifically, Keller asserts that at trial, Scroggins attempted to assign responsibility to Keller for the trip that Nance was making at the time of the accident, and that the loan receipt agreement would have revealed Ryder's financial interest in the case's outcome (and thus Scroggin's motivation for his position). The district court ruled the evidence inadmissible because Scroggins did not know of the agreement and thus could not offer any pertinent testimony on the matter. Evidentiary rulings by the trial judge are reviewed for an abuse of discretion, *see Old Republic Ins. Co. v. Employers Reins. Corp.*, 144 F.3d 1077, 1082 (7th Cir. 2001), and we will alter the district court's ruling only if failure to do so would be "'inconsistent with substantial justice.'" *Id.* (citing Fed. R. Civ. P. 61).

We look to *Bachenski v. Malnati*, 11 F.3d 1371 (7th Cir. 1993) for guidance on this issue. In *Bachenski*, we found no abuse of discretion where the district court excluded evidence of a settlement agreement and the witness had no personal knowledge of the agreement. More specifically, we noted that while "[w]itness bias is a quintessentially appropriate topic for cross examination," the district court "acted well within the the bounds of its

---

[6]  (...continued)
certification to the Indiana Supreme Court. We note that "the issue in this case arises often in state litigation, and the courts of Indiana will have ample opportunity to revisit the subject if our disposition is unsatisfactory." *Schmitt v. American Family Mut. Ins. Co.*, 161 F.3d 1115, 1117 (7th Cir. 1998).

discretion" when it "accepted the representation of coun-
sel that [the witness] personally did not know and would
not be informed about the existence of the settlement." *Id.*
at 1375-76. Similarly, the district court in the instant case
accepted counsel's representation that Scroggins had no
knowledge of the loan receipt agreement and therefore
excluded the agreement.

Keller's strongest grounds for distinguishing *Bachenski*
are that: 1) the witness's bias in *Bachenski* was already
apparent for other reasons; and 2) while the settlement
agreement in *Bachenksi* might have improperly influenced
the jury, the loan receipt agreement at issue here would
not have resulted in improper influence. These arguments
are not convincing. Keller was able to cross-examine
Scroggins extensively about bias resulting from Ryder's
potential liability for the accident. Additionally, the jury
might have been unable to limit its consideration of the
loan receipt agreement to the issue of bias, and instead
inferred that the plaintiff had already been fully compen-
sated for her loss through the loan receipt agreement. We
therefore find that the district court did not abuse its
discretion by excluding the loan receipt agreement.[7]

---

[7] Although the Federal Rules of Evidence ultimately govern the
admissibility of evidence in federal trials, we may look to state
evidence rules in diversity cases under certain circumstances.
*See Shirley v. Russell*, 69 F.3d 839, 844 (7th Cir. 1995); *Brant
v. Vulcan, Inc.*, 30 F.3d 752, 760 (7th Cir. 1994). Keller there-
fore cites numerous Indiana cases for the proposition that loan
receipt agreements may be introduced into evidence to show a
witness's bias. However, none of the cases relied on by Keller
address the issue whether a loan receipt agreement is admis-
sible when the witness has no knowledge of the agreement. *See,
e.g.*, *Manns v. State, Dep't of Highways*, 541 N.E.2d 929, 934
(Ind. 1989); *Gray v. Davis Timber & Veneer Corp.*, 434 N.E.2d
146, 148 (Ind. Ct. App. 1982); *State v. Thompson*, 385 N.E.2d
198, 210-11 (Ind. Ct. App. 1979).

C.   Actively Doing Business at the Time of the Accident

Keller asserts that because it sold all of its assets to E.C. Trucking the year before the accident occurred, there was insufficient evidence to support the jury's finding that it was actively doing business at the time of the accident. When reviewing a jury's verdict for sufficiency of the evidence, we view the evidence presented at trial, including all reasonable inferences to be drawn from it, in the light most favorable to the prevailing party. *See Molnar v. United Techs. Otis Elevator*, 37 F.3d 335, 337 (7th Cir. 1994).

Keller correctly notes that before the accident, E.C. Trucking acquired, among other things, Keller's trucks, licenses, permits, certificates, and ICC authority. However, Keller concedes that no evidence was presented at trial to indicate that Keller had formally dissolved or that Keller had formally merged with E.C. Trucking. The evidence presented *did* reveal that Keller, not E.C. Trucking, was listed on Nance's January 2000 job application, log books, road test, drug test, and other employment documents (such as his W-2s). In addition, one witness claimed that Keller was still an entity registered with the government. Three witnesses asserted at various points that Nance was employed both by Keller and E.C. Trucking (although two of these witnesses later made contrary statements). We therefore find that sufficient evidence existed to support the jury's determination that Keller was still doing business at the time of the accident.

D.   Jury Instructions

Finally, Keller complains that the jury instructions failed to adequately inform the jury that Keller was not accountable for E.C. Trucking's conduct even when E.C. Trucking was doing business using Keller's name. Keller further argues that the court should have instructed the jury not

to infer that Keller was responsible for the accident simply because of its affiliation with E.C. Trucking.

When assessing the adequacy of jury instructions, we review the instructions as a whole, and reverse only if the instructions failed to adequately state the applicable law and the litigant was thereby prejudiced. *See Alston v. King*, 157 F.3d 1113, 1118 (7th Cir. 1998); *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 725 (7th Cir. 1994). Additionally, in the absence of "evidence to the contrary, we assume that juries follow a court's instructions." *See Minn. Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001).

Here, the district court explicitly stated the circumstances under which Keller would not be held accountable. Jury Instruction 8 stated in part the following:

> If, on the other hand, you find that Mr. Nance was employed only by E.C. Trucking, Inc.—even if E.C. Trucking, Inc. was doing business as C.W. Keller Trucking, Inc.—then C.W. Keller Trucking, Inc. is not liable to Mrs. Fort.

This instruction alone was sufficient to convey that Keller and E.C. Trucking are separate entities, and that the jury should not hold Keller liable either because Keller was affiliated with E.C. Trucking or because E.C. Trucking was doing business as Keller at the time of the accident. Moreover, other instructions conveyed these principles. For example, Jury Instruction 10 made it clear that the jury must determine whether Nance was employed by Keller based solely on *Keller's* conduct, not E.C. Trucking's actions. We therefore find that the instructions as a whole were sufficient to convey to the jury that Keller and E.C. Trucking were different companies, and that only Keller's actions were to be considered when assigning liability.

### III.  CONCLUSION

For the reasons set forth in this opinion, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*