# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1225

CAROLINA CASUALTY INSURANCE COMPANY,

*Intervenor/Plaintiff-Appellant*,

*v.*

E.C. TRUCKING et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana.
No. 300: CV 228—**Robert L. Miller, Jr.**, *Chief Judge.*

SUBMITTED SEPTEMBER 18, 2003—DECIDED JANUARY 31, 2005

Before COFFEY, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Carolina Casualty intervened in Vanesse Fort's wrongful death action, seeking a declaratory judgment that it had no duty to provide coverage for any judgment rendered against its insured, C.W. Keller Trucking, Inc., in the wrongful death case. The district court denied Carolina Casualty the requested relief, finding that the federally-mandated MCS-90 endorsement attached to its policy was applicable. We agree and, therefore, affirm.

## I.  BACKGROUND

This appeal arises from a tragic accident on March 15, 2000 in Peru, Indiana, in which a tractor-trailer driven by Jacob Nance struck Eric Fort's vehicle, killing Fort. E.C. Trucking, Inc. owned the tractor, which it leased to Ryder Integrated Logistics. Ryder owned the trailer.

When the accident took place, Ryder and E.C. Trucking were parties to a lease agreement. Under this agreement, Ryder leased three tractors from E.C. Trucking and provided to E.C. Trucking its Interstate Common Carrier (ICC) authority, enabling E.C. Trucking to haul automobile parts in certain runs specified by Ryder. E.C. Trucking did not have its own ICC authority. Ryder also had an agreement with C.W. Keller Trucking, Inc. under which Keller acted as a subcontractor for Ryder, hauling automobile parts on runs designated by Ryder using Keller's own ICC authority. At the time of the accident, E.C. Trucking owned Keller and was legally entitled to use the name "E.C. Trucking d/b/a C.W. Keller Trucking."

On the day of the collision, Nance was scheduled to do a run pursuant to Ryder's agreement with Keller. As dictated by that agreement, Nance was to use a tractor bearing Keller's placards and ICC authority. The scheduled tractor experienced mechanical difficulty so Nance instead used a tractor owned by E.C. Trucking and leased to Ryder bearing Ryder's placards and ICC authority. A dispatcher employed by the owner of both E.C. Trucking and Keller made the switch, but did not get Ryder's permission to do so.

Vanesse Fort, Eric Fort's widow, brought a wrongful death action against Ryder, Nance, E.C. Trucking, and Keller. Carolina Casualty Insurance Company, Keller's insurer at the time of the accident, intervened in the lawsuit, seeking a declaration that its policy with Keller did not afford coverage for the dispute. The district court bifurcated the coverage dispute and the wrongful death action.

Before trial in the wrongful death suit, Fort entered into a loan receipt agreement with Ryder, agreeing to dismiss her suit against all defendants except Keller. Under the agreement, Fort received $2.25 million from Ryder and agreed that she would repay Ryder one-third of the amount she recovered from Keller, but no more than $2.25 million. Ultimately, a jury found Keller liable in the wrongful death action and awarded Fort $1,042,234.75. Keller requested that the district court reduce the judgment against it by the amount Keller would retain from the loan receipt agreement with Ryder (which would reduce Keller's payment to zero). The district court denied the request and this court affirmed in *Fort v. C.W. Keller Trucking*, 330 F.3d 1006 (7th Cir. 2003).

In the coverage dispute, the district court found that, although the general provisions of Carolina Casualty's policy with Keller did not afford coverage, Fort was entitled to recover pursuant to a federally-mandated endorsement attached to Carolina Casualty's policy with Keller, the MCS-90 endorsement. The district court further found that Ryder's insurance policy with Old Republic Insurance Company (which was not a party to the action) did not afford coverage. Carolina Casualty appeals the district court's judgment in favor of Fort and its finding that the Old Republic policy did not provide coverage.

## II. ANALYSIS

### A. MCS-90 Endorsement

We first consider Carolina Casualty's argument that the district court erred by finding that the policy's MCS-90 endorsement entitled Fort to recover from the insurer. Regulations promulgated pursuant to the Motor Carrier Act, 49 U.S.C. § 13906(f), mandate that liability insurance policies providing coverage for motor carriers include a MCS-90 endorsement. 49 C.F.R. §§ 387.7(a), 387.9, 387.15.

"Federal law applies to the operation and effect of [such] endorsements." *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir. 2000). The MCS-90 endorsement provides, in pertinent part, as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . regardless of whether or not each motor vehicle is specifically described in the policy . . . . [N]o condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of financial condition, insolvency or bankruptcy of the insured.

Thus, "whatever limitation a policy expresses regarding coverage extending only to 'covered' or 'specified' autos, this limitation ceases to operate when an injured member of the public seeks indemnification on behalf of the insured." *John Deere*, 229 F.3d at 859.

We agree with the district court that the endorsement was intended to compensate members of the public such as Fort. *See id.* at 857 ("It is well-established that the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgments from negligent authorized interstate carriers."); *see also Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1140 (7th Cir. 1986) (noting that ICC regulations are intended "to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of

its trucking operations"). Indeed, in this case the endorsement is particularly applicable, as a jury rendered a final judgment against Keller, Carolina Casualty's insured, for liability arising from the negligent injury of a member of the public, namely Eric Fort.

Carolina Casualty argues that, despite the endorsement's language which plainly suggests that Fort is entitled to recover, the MCS-90 endorsement is not applicable to Fort, as she was already compensated when she received $2.25 million from Ryder pursuant to the aforementioned loan receipt agreement. We disagree. Our prior decision in *Fort v. C.W. Keller Trucking* held that the payment Fort received from Ryder was a loan, which under Indiana law is not considered satisfaction of a judgment. 330 F.3d at 1009-13. *See American Transport Co. v. Central Indiana Ry. Co.*, 264 N.E.2d 64, 67 (Ind. 1970) (finding that funds received via loan receipt agreement in no way constitutes a partial payment or partial satisfaction of the judgment); *Sanders v. Cole Mun. Fin.*, 489 N.E.2d 117, 120 (Ind. Ct. App. 1986) (same). Further, Carolina Casualty cites no authority (and we know of none) supporting the proposition that a member of the public is not entitled to recover pursuant to the MCS-90 endorsement if she receives funds pursuant to a loan receipt agreement. Therefore, in this case, we decline to find that the loan receipt agreement relieved the insurer, Carolina Casualty, of its obligation under the MCS-90 endorsement to pay Fort, a member of the public, for the final judgment rendered against its insured, Keller.

Carolina Casualty's remaining arguments warrant little discussion. Carolina Casualty contends that Fort should not be able to recover under the MCS-90 endorsement because portions of the money Fort recovers will flow to Ryder, as the loan receipt agreement provides that Ryder is entitled to one-third of the amount Fort recovers from Keller. This argument is of no avail; what Fort does with the money she receives from Carolina Casualty has no bearing on the

applicability of the MCS-90 endorsement. Carolina Casualty also asserts that because E.C. Trucking owns Keller and the loan receipt agreement provided that Fort would not attempt to recover from E.C. Trucking, she should be barred from recovering against Keller, and, ultimately, its insurer Carolina Casualty. We reject this argument, as the loan receipt agreement itself contemplated that Fort would pursue its claims against Keller.

**B.  Old Republic Policy**

In holding that the MCS-90 endorsement provided coverage, the district court also determined that a separate policy, which Old Republic Insurance Company issued Ryder insuring its trailers, did not provide coverage for the accident. Carolina Casualty challenges this conclusion on two fronts: first, it argues that the district court should not have *sua sponte* decided this issue and second, it argues that the district court was wrong to conclude that the Old Republic policy did not apply. We disagree with both arguments.

Although it is not favored, a district court may enter summary judgment *sua sponte* so long as the losing party is given notice and an opportunity to be heard on the underlying issues. *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002). Here, Carolina Casualty was on notice and had a reasonable opportunity to present evidence regarding whether the Old Republic policy provided coverage for the accident. In fact, in its brief in support of its motion for summary judgment, Carolina Casualty specifically raised the issue of coverage under the Old Republic policy and attached a copy of the policy to its brief. The brief included a separate heading discussing the Old Republic policy and also specifically noted: "To the extent the Old Republic policy provides coverage, this Court should find that [Carolina Casualty] has no obligation to pay under the

MCS-90." Appellant's Summary Judgment Brief at 18. Having placed this issue before the district court at a time when the court was actively considering summary judgment motions, Carolina Casualty cannot now complain that it was denied an opportunity to present evidence on the issue.

We now turn to the district court's disposition of Carolina Casualty's substantive claim on this issue. The relevant provision of Ryder's Old Republic policy provides:

> The following are "insureds":
>
> a.  You for any covered "auto."
>
> b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

Indiana[1] follows the "liberal rule" on permissive use. *See Vanliner Ins. Co. v. Sampat*, 320 F.3d 709, 713 (7th Cir. 2003); *State Farm Mut. Auto. Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994). Pursuant to this rule:

> [O]ne who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the insured owner when he entrusted the automobile to the use of such permittee.

*Gonterman*, 637 N.E.2d at 813. Nevertheless, when an owner has placed restrictions on the use of a vehicle, violations of such restrictions may terminate permission. *Id.* at 814. "In a coverage dispute, permissive use cannot be implied when an express restriction on the scope of permission prohibits the use at issue." *Id.*

In the case at bar, Ryder did not authorize Keller to use its trailer with a tractor bearing Ryder's placards and ICC

---

[1]  The parties do not dispute that Indiana law governs this issue.

authority. To the contrary, the Ryder/Keller subcontractor agreement, pursuant to which Nance was acting when he had the accident, provided that all runs done pursuant to the agreement would use E.C. Trucking owned tractors bearing Keller placards and ICC authority. Keller did not obtain permission to use the trailer involved in the accident and, because permissive use is a prerequisite for coverage under the Old Republic policy, the district court did not err by finding that the policy does not cover the accident.

Carolina Casualty contends that Ryder gave implied permission to use the trailer because, according to Carolina Casualty, the same trailer would have been used had the originally scheduled tractor not experienced mechanical difficulties. But permissive use cannot be implied when, as here, an express restriction prohibits that use. *See Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 107 (Ind. 1997) ("[I]mplied permission is inadequate as a matter of law to overcome [an] express restriction upon permission").

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*