# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1269

GORDON R. JOHNSON,

*Plaintiff-Appellant,*

*v.*

EXXONMOBIL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 5003—**Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 28, 2005—DECIDED OCTOBER 18, 2005

Before FLAUM, *Chief Judge,* and MANION and EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* Gordon Johnson claims that he was terminated from his job at ExxonMobil Corp. ("Exxon") because of his age and because he suffers from epilepsy. He has therefore filed claims under both the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). Johnson has also applied for, and received, Social Security Disability Insurance ("SSDI") benefits. On his application for those benefits, he stated that he has been unable to work because of his disability, epilepsy, since the date that he was terminated from Exxon. Exxon filed a motion for summary judgment, claiming that Johnson's SSDI application judicially estopped his claim

that he could have worked "with or without reasonable accommodation," an element of his ADA claim. Although Johnson provided an explanation for the inconsistency between his SSDI application and his ADA claim, the district court ruled that this explanation was not sufficient to overcome Exxon's summary judgment motion. Immediately before trial on the ADEA claim was to begin, the court granted summary judgment, *sua sponte*, on the ADEA claim, noting that Johnson's SSDI application judicially estopped him from claiming that he "performed to [his] employer's legitimate expectations," which is an element of a *prima facie* ADEA claim. Johnson appeals both summary judgment rulings, claiming that he is not judicially estopped from bringing either his ADA or his ADEA claim. Johnson also claims that he did not have an opportunity to respond to the judicial estoppel arguments with respect to his ADEA claim; therefore a *sua sponte* summary judgment ruling was improper. For the reasons set out below, we affirm the district court's summary judgment rulings on both claims.

## I.  Background

Gordon Johnson was employed at ExxonMobil's Joliet, Illinois refinery as an Administrative Line Supervisor for over 28 years. He was 54 years old and suffered from epilepsy at the time Exxon fired him.

Johnson had his first epileptic seizure in 1973. His condition was severe, and he continued to experience frequent seizures even after treatment with anti-seizure medication. His disorder and the medication he took to treat it affected his judgment, memory, and ability to concentrate. He was also restricted from driving because of his seizures. He experienced uncontrollable tremors, and his medication occasionally made him drowsy and incoherent. Johnson claims that his severe epilepsy makes him disabled under the ADA.

Johnson claims that during his employment, he was consistently harassed by his supervisor for his disability and his job responsibilities were diverted to younger employees. Johnson further claims that his supervisor refused to send him to the training necessary to perform his job duties and to advance within the work group, sending younger employees instead.

On March 11, 2002, Johnson complained to Exxon's Human Resources Department that the company was discriminating against him due to his age and disability. On March 14, Exxon representatives presented Johnson with a Notice of Resignation and requested that Johnson voluntarily resign from his employment. When he refused to resign voluntarily, Exxon terminated him. At the time he was terminated, he was one-and-a-half years away from retirement.

Johnson claims that his termination was the result of discrimination. However, Exxon claims that it was a result of Johnson's frequent personal use of a corporate credit card for personal purchases. Johnson claims that he was never told that he could not use the credit card for personal purchases and that he paid the balance with personal funds. Exxon claims that Johnson attended a business practice review training course, during which he was told not to use the card for personal purchases. Exxon also claims that Johnson signed a "compliance statement" indicating that he understood the policies described during the course. Exxon further claims that Johnson had been approached about the credit card problem on two occasions before he was finally terminated on March 14.

Johnson claims that younger, non-disabled employees were not terminated for using the corporate credit card for personal purchases. He lists several employees who all parties admit violated the policy and who were not terminated from their positions. He filed a discrimination suit in

July 2002.

In March 2003, Johnson applied for SSDI benefits. On his application, Johnson stated that he became "unable to work because of [his] disabling condition" on March 14, 2002, the same day he was terminated from Exxon. He signed this application, swearing that the information contained in it was accurate. The Social Security Administration denied Johnson's application.

Exxon filed a motion for summary judgment on the ADA claim, arguing that Johnson's SSDI application judicially estopped him from claiming that he was able to perform his job "with or without reasonable accommodation" as of the date of his termination. Johnson argued that he could explain the inconsistency. He explained to the court that his condition worsened shortly after he was fired, rendering him unable to work, that the application was completed a year after his total disability, and that Johnson had not filled out the application himself. The district court initially denied Exxon's motion in September 2002, on the ground that, at the time, Johnson had not received any SSDI benefits.

In October 2003, the Social Security Administration reversed its decision to deny Johnson benefits. It approved Johnson's application for SSDI benefits retroactive to his last date of employment with Exxon.

In November 2003, the district court granted a motion for partial reconsideration of Exxon's motion for summary judgment on the ADA claim, based on evidence that Johnson was now receiving SSDI benefits. Exxon again argued judicial estoppel based on the application. Johnson repeated his explanation for the inconsistency. The district court granted summary judgment on the ADA claim, holding that the plaintiff did not adequately explain his inconsistent statements.

On Jan. 8, 2004, Exxon filed an additional motion for summary judgment arguing that Johnson did not have the evidence necessary to recover any damages at trial under the ADEA and that therefore it was futile to proceed any further. The district court denied the motion.

On January 23, the judge held a jury instruction conference, as the trial on the ADEA claim was set for January 26. During this conference, Exxon again argued that Johnson could prove no damages and that the court should grant summary judgment. The judge requested that Exxon submit additional authority with respect to the dismissal of the ADEA claim. Exxon complied, submitting a letter to the court late in the day on January 23. In that letter, Exxon argued that Johnson could not establish a *prima facie* ADEA claim because of the statements made in his SSDI application. In that application, he claimed that he was unable to work as of the date he was terminated, which contradicted an essential element of his ADEA claim—that he could perform his job at the level reasonably expected of him on that date.

On January 26, the trial date for the ADEA claim, before the jury selection began, the district court asked Johnson's attorney, "What evidence are you going to put on to explain away the inconsistency between the statement made to the Social Security Administration and his ability to work . . . and perform the functions of his job?" Johnson's attorney replied that Johnson would testify that the date on the application was an error, given that he worked a full day on March 14, 2002. Johnson's attorney further told the court that Johnson would testify that he did not file the application until a year after his disability became total, which could explain his inability to recall the exact date of his disability.

The district court then granted summary judgment on the grounds that the proffered explanation was not sufficient to

reconcile the two claims and Johnson had been given ample opportunity to argue the issue in the earlier response to Exxon's motion for partial reconsideration. The district court said that it would be "an exercise in futility" to continue with the trial when it would only end in a directed verdict for the defendant at the close of plaintiff's evidence. Moreover, the court stated that had Exxon moved for summary judgment at the time it filed for judgment on the ADA claim, the court would have granted the motion at that time. The court then granted summary judgment to Exxon on the ground that the SSDI application judicially estopped Johnson from proving an element of his ADEA claim.

Johnson timely appealed both summary judgment rulings.

## II.  Discussion

### A.  The ADA claim

To establish a *prima facie* case under the ADA, a plaintiff must show that, "with or without reasonable accommodation," he can "perform the essential functions of the employment position that [he] holds." 42 U.S.C. § 12111(8). Johnson's SSDI application, which claimed that he was unable to work because of his disability as of the date of his termination, would appear to directly contradict this element of a valid ADA claim. Exxon claims that Johnson's ADA claim is therefore judicially estopped.

The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding. Judicial estoppel is "an equitable concept providing that a party who prevails on one ground in a lawsuit may not . . . in another lawsuit repudiate that ground." *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (quoting *Ogden Martin Systems of Indianapolis v. Whiting Corp.*, 179 F.3d

523, 526 (7th Cir. 1999) (internal quotation marks omitted)). The purpose of this doctrine is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

The Supreme Court has found that applicants' claims of being disabled on SSDI applications do not automatically judicially estop ADA claims. In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), the Court held that, "[D]espite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption. . . . That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland*, 526 U.S. at 802-03. This is so, the Court reasoned, because the ADA allows for "reasonable accommodation" of the disability, while the Social Security Administration does not when determining SSDI eligibility. *Id.* at 803. As this Court noted in *Feldman v. American Memorial Life Insurance Co.*, 196 F.3d 783 (7th Cir. 1999), "Sufficient divergence exists between the definitions of 'disability' under the ADA and SSDI that, in some circumstances, an individual can claim truthfully both that she is able 'to engage in any substantial gainful activity' under the SSDI but also a 'qualified individual with a disability' under the ADA. *Feldman,* 196 F.3d at 790.

Such is not always the case, however. The Court noted in *Cleveland* that "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim." *Cleveland*, 526 U.S. at 805. The Court further stated:

> Summary judgment for a defendant is appropriate when a plaintiff "fails to make a sufficient showing to establish the existence of an element essential to [her] case on which [she] will bear the burden of proof at trial." . . . And a plaintiff's sworn assertion in an application for disability benefits that she is, for exam-

ple, "unable to work" will appear to negate an essential element of her ADA case[—that she can perform the essential functions of her job]—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

*Id.* at 805-06. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court defined what constitutes a "sufficient explanation" for the apparent contradiction:

To defeat summary judgment, [an] explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807.

Johnson's claim does not pass this test. Unlike *Cleveland*, where the plaintiff's argued that she made consistent statements in her ADA claim and the SSDI application, Johnson merely argues that he was mistaken in his SSDI application.[1] As this court has noted, *Cleveland* does not stand for the proposition that defendants should be allowed to explain why they gave false statements on their SSDI applications, which is essentially what Johnson seeks to do here. *See Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir. 2005) ("[C]ontradictions are unacceptable: a

---

[1] It is also noteworthy that while Johnson has argued to this Court that his ADA claim should not be estopped by an innocent mistake on his SSDI application, he has presented no evidence that he has taken any steps to correct the mistake and relinquish the benefits that he received as a result of it.

person who applied for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job then an ADA claim my be rejected without further inquiry.").

The district court's decision to grant summary judgment to the defendants on the ADA claim is therefore affirmed.

*B. The ADEA claim*

The SSDI application also created problems for Johnson's ADEA claim. In order to establish a *prima facie* case under the ADEA utilizing the indirect burden shifting method, a plaintiff must show that he is performing to the employer's legitimate expectations. *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir. 1996) (citing *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995) and *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir. 1995)). This standard is even harder to meet than that of the ADA, which requires the employer to provide "reasonable accommodation." Johnson's statement on his SSDI application that he was unable to work facially contradicted any claim that he was performing to his employer's legitimate expectations.

Under ordinary circumstances, that alone would be enough to affirm the district court's summary judgment ruling. However, in this case, Johnson claims that the district court erred by granting summary judgment *sua sponte*. In order to grant summary judgment *sua sponte*, the court must give the losing party reasonable notice and a fair opportunity to present evidence. *Celotex Corp.*, 477 U.S. at 326; *see also Caroline Casualty Ins. Co. v. E.C. Trucking*, 396 F.3d 837, 842 (7th Cir. 2005) ("Although it is not favored, a district court may enter judgment *sua sponte* so long as the losing party is given notice and an opportunity to be heard on the underlying issues." (citing *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002))).

Johnson argues that Exxon did not raise the judicial estoppel issue with respect to his ADEA claim until its letter of additional authority, which was not submitted to the court until the evening of Friday, Jan. 23, 2004. Since summary judgment was granted Monday morning, Jan. 26, 2004, Johnson claims that he was not given adequate notice and opportunity to respond, which makes the district court's *sua sponte* judgment improper.

This Court does not accept Johnson's argument. First, Johnson had ample opportunity to be heard. The issue in the ADEA claim was similar to the one fully argued with respect to the ADA claim: namely, whether the SSDI application judicially estopped Johnson from claiming that he was able to perform work at the time of his termination. Johnson had every incentive, as the district court pointed out before granting summary judgment, to explain any inconsistency between his SSDI application when responding to both the original motion for summary judgment on the ADA claim and the November motion for partial reconsideration. He had an additional opportunity immediately before the court granted summary judgment when the court specifically asked what evidence he intended to present that day at trial to explain the inconsistency between his ADEA claim and his SSDI application.

Plaintiff also had sufficient notice. Because the standard for an ADEA claim is more exacting than the standard for the ADA claim, as the ADEA does not allow for "reasonable accommodation," plaintiff should have been on notice that the issue would become relevant at trial. Moreover, plaintiff did not object at the time of the ruling that he did not have sufficient notice that his ADEA claim was in peril.

Because the plaintiff had ample notice and opportunity to be heard on the judicial estoppel issue, the district court's *sua sponte* ruling was appropriate. We affirm the district court's judgment for Exxon on the ADEA claim.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment rulings on both the ADA claim and the ADEA claim.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*